FAJARDO SUGAR COMPANY, DEMANDANTE Y APELADA, *v.* RICHARDSON, TESORERO DE PUERTO RICO, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en causa sobre devolución de contribuciones.

No. 1165.—Resuelto en abril 10, 1915.

DEVOLUCIÓN DE CONTRIBUCIONES — INCONGRUENCIA ENTRE LA DEMANDA Y LA PRUEBA—LEY ORGÁNICA—RELACIÓN DE LA JUNTA DE REVISIÓN E IGUALAMIENTO CON EL TESORERO.—Alegado que hubo incongruencia entre la demanda y la prueba, porque la demanda se refiere a la tasación hecha por el Tesorero de Puerto Rico cuando ésta se hizo finalmente por la Junta de Revisión e Igualamiento, se resolvió que la acción de la junta es necesariamente la acción del Tesorero de Puerto Rico.

CRÉDITOS—CONTRIBUCIONES.—Los créditos están exentos del pago de contribuciones en Puerto Rico, de acuerdo con la enmienda hecha al artículo 290 del Código Político de 1904, y así ha sido antes resuelto en el caso de *The Union Central Life Insurance Company* v. *Gromer, Tesorero de Puerto Rico*, 19 D. P. R., 900.

ID.—PROPIEDAD—INTENCIÓN DE TASAR.—El mero hecho de que la Legislatura indique la intención de tasar toda la propiedad, no hace que toda forma o mutación de propiedad esté sujeta a tasación.

ID.—CONSTITUCIÓN DE LOS ESTADOS UNIDOS—PROPIEDAD.—Los créditos no son necesariamente propiedad, de acuerdo con el precepto que exige que sea tasada toda la propiedad.

ID.—BIENES MUEBLES—INTENCIÓN DEL LEGISLADOR.—Si bien generalmente la propiedad mueble comprende los créditos, al excluirlos específicamente el artículo 290 del Código Político según la enmienda hecha en 1904, debe tenerse por cierto que ésa fué la intención del legislador.

CONTRIBUCIONES—EXENCIONES—EXCEPCIONES—INTENCIÓN DEL LEGISLADOR.—Es una regla establecida que el soberano está en la obligación de expresar su intención de fijar una contribución en lenguaje claro e inequívoco, y que deberá darse una interpretación liberal a las palabras que establecen la excepción, las cuales limitan la aplicación del deber, aun cuando las palabras relativas a exenciones de las leyes generales que fijan contribuciones puedan ser diferentes.

CRÉDITOS—BIENES MUEBLES—EXCLUSIÓN CONTENIDA EN EL ARTÍCULO 290 DEL CÓDIGO POLÍTICO—INTENCIÓN DEL LEGISLADOR.—Ya se considere la exclusión de los créditos contenida en el artículo 290 del Código Político, según fué enmendado por la ley de 1904 como una exención o excepción a la tasación, la intención del legislador es clara y se manifiesta asimismo en las demás enmiendas hechas en ese año a los artículos 317 y 319 del mismo código, en las que, al exigirse a las corporaciones que presenten una relación de sus bienes muebles, omite también de ellos la palabra ''créditos.''

ID.—PRÉSTAMOS O ADELANTOS.—Los adelantos o préstamos hechos por la demandante a compañías azucareras, ferrocarrileras y cultivadoras de cañas, sin que conste que estuvieran garantizados ni aparezca la naturaleza de los contratos celebrados entre ellas, o son créditos o son una clase de cosa que la Legislatura no ha indicado su intención de incluir en la definición de propiedad.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Wolcott H. Pitkin, Jr., Attorney General de Puerto Rico,* y *Charles E. Foote, Fiscal del Supremo.*

Abogado de la apelada: *Sr. Luis Muñoz Morales.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Esta es una acción sobre devolución de contribuciones pagadas bajo protesta establecida de acuerdo con la Ley No. 35, aprobada en marzo 9, 1911. La demandante es una corporación organizada con arreglo a las leyes del Estado de Nueva York. Según la demanda original y la complementaria el demandado entre otras cosas amillaró propiedad de

la demandante tasándola en la suma de $1,015,530.55. La demandante se opuso a dicha tasación; pero, sin embargo, pagó bajo protesta al referido Tesorero la suma de $12,186.37, por todo el año, basada en la anterior tasación.

Se alega además en la demanda y demanda complementaria que la suma de $1,015,530.55, tasada al demandante consistía enteramente en créditos, o sea, (*a*) anticipos, préstamos y cuenta corriente con The Fajardo Sugar Growers' Association, ascendentes a $743,383.79; (*b*) cuenta corriente con The Fajardo Development Company, que es una compañía de ferrocariles, ascendente a $200,146.76, y (*c*) pagarés y documentos a cobrar, ascendentes a $72,000. La demandante alegó que toda la suma expresada estaba exenta de dicha tasación por virtud del artículo 290 del Código Político de Puerto Rico, fundándose principalmente en la decisión de este tribunal en el caso de *Union Central Life Insurance Company* v. *Gromer,* 19 D. P. R., 900.

Aparece de la estipulación hecha por las partes que el Tesorero, para los fines de la tasación expresados en los artículos 290, 317 y 320 del Código Político, tasó la propiedad de la demandante en la suma de $3,357,194. Estos artículos según han sido enmendados son los siguientes:

"Artículo 290.—Que toda propiedad no exenta expresamente del pago de contribuciones será tasada como imponible. Para los efectos de la tasación de contribuciones la frase 'propiedad real' se considerará sinónima de 'inmueble,' según la definición hecha en los artículos 333, 334 y 335 del Código Civil; *disponiéndose, sin embargo,* que las maquinarias, vasijas, e instrumentos o implementos no adheridos al edificio o suelo no se considerarán como inmuebles. Los bienes muebles comprenderán dichas maquinarias, vasijas, instrumentos o implementos no adheridos al edificio o suelo, el ganado en pie, bien en poder del mismo dueño o de otra persona, o depositado en alguna institución, los bonos, las acciones, certificados de créditos en sindicatos o sociedades no incorporadas, derechos de privilegio, marcas de fábrica, franquicias, concesiones y todas las demás materias y cosas susceptibles de ser propiedad privada, no comprendidas en la significación de la frase 'propiedad real,' pero no com-

prenderán los créditos en cuentas corrientes, pagarés, ni otros créditos personales.''

''Artículo 317.—La propiedad mueble de instituciones, corporaciones y compañías incorporadas con arreglo a las leyes de Puerto· Rico fuera de las instituciones bancarias con capital en acciones, deberá tasarse como perteneciendo a tales instituciones, corporaciones y compañías por el Tesorero de Puerto Rico, en la forma que este artículo prevee. El valor efectivo actual del capital de las citadas corporaciones, se fijará por el Tesorero de Puerto Rico de conformidad con la declaración jurada de los presidentes, directores, u otros funcionarios al frente de tales corporaciones, como se requiere por el artículo 319, o basándolo en cualquier otro informe fidedigno· que el Tesorero tenga o adquiera, y el valor efectivo actual no será en ningún caso menos que el valor del capital y bonos, más el sobrante y ganancias no divididas de dichas instituciones, corporaciones y compañías; ni será menor que el valor en el mercado de los bienes inmuebles y muebles de dichas instituciones, corporaciones y compañías, incluyendo en los bienes muebles' todos los derechos, franquicias y concesiones. De la tasación obtenida en ·esta forma se deducirá el valor total de la propiedad inmueble de dichas corporaciones, que resulte de la tasación verificada de acuerdo con las disposiciones del artículo 316; y el resto será considerado como que representa la propiedad mueble de dichas corporaciones que ha de someterse a contribución.''

''Artículo 320.—La tasación de toda corporación, compañía anónima por acciones, y compañía limitada, que no haya sido incorporada en Puerto Rico, pero que se dedique a la transacción de negocios en la isla, fuera de los bancos e instituciones bancarias con capital en acciones, se hará en la forma que dispone este título para la tasación de la propiedad de instituciones, corporaciones y compañías incorporadas con arreglo a las leyes de Puerto Rico; *disponiéndose, no obstante,* que para determinar el valor real y efectivo, a la sazón, del capital de tales corporaciones, sólo se tendrá en cuenta y valuará aquella parte del capital que tengan ellas empleado en la transacción de negocios en Puerto Rico; pero la cantidad de dicho capital no será, en ningún caso, menor que el valor de la propiedad inmueble y mueble ubicada en Puerto Rico perteneciente a tal corporación o compañía, incluyendo en la propiedad mueble todas las franquicias o concesiones otorgadas a dicha corporación o compañía con arreglo a las leyes de Puerto Rico. , Todas las obligaciones impuestas a las instituciones, corporaciones y compañías, incorporadas ·con arreglo a las leyes de Puerto Rico, o señaladas a sus oficiales,

respecto a llenar y devolver planillas, bajo declaración jurada o en otra forma, deberán igualmente comprender a las corporaciones, compañías anónimas por acciones y compañías limitadas que no hayan sido incorporadas en Puerto Rico, y a sus oficiales. Todas las acciones en el capital de bancos e instituciones bancarias, ya fueren o nó de emisión, organizados por autoridad de los Estados Unidos, o de cualquier Estado de la Unión, o de Puerto Rico, o de otro modo, situados y dedicados a negocios en Puerto Rico, serán tasadas para el reparto de contribuciones por el Tesorero de Puerto Rico a nombre de los dueños de las mismas en los distritos municipales en que los bancos estén situados, y en ninguna otra parte. Al efectuarse el reparto de todas las contribuciones insulares y municipales que se hubieren impuesto o que en adelante se impusieren de acuerdo con la ley, en dicho municipio, ya fueren los dueños residentes o nó del mismo, todas las citadas acciones serán tasadas en su justo valor en plaza, el día quince de enero, deducida la parte proporcional del valor de los bienes inmuebles pertenecientes al banco, y las personas o corporaciones que aparecieren en los libros del banco como dueños de acciones al cerrarse las operaciones en la víspera del día quince de enero de cada año, serán considerados como tales dueños para los efectos de este artículo. Cada uno de dichos bancos pagará al Tesorero de Puerto Rico, en la época del año en que vencen las demás contribuciones repartidas en el municipio, el importe de la contribución impuesta sobre sus acciones en tal año. Si dicha contribución no fuere satisfecha responderá el banco de la misma, y esa contribución más las penas prescritas en el artículo 330 de este título, podrá el Tesorero de Puerto Rico hacerlas efectivas, de igual modo que en los casos de contribuciones atrasadas. Las acciones de dichos bancos estarán sujetas a la contribución pagada sobre ellas por el banco, o por los oficiales del mismo, los cuales tendrán un derecho de retención sobre todas las acciones de dicho banco y sobre todos los derechos y pertenencias de los accionistas en la propiedad común, para el pago de dichas contribuciones. El cajero de cada uno de dichos bancos preparará y entregará al Tesorero de Puerto Rico, a más tardar el quince de enero de cada año, un estado demostrativo, certificado bajo juramento por el mismo cajero, en que conste el nombre de cada accionista, su residencia y número de acciones que le pertenecían al cerrarse las operaciones en la víspera del día quince de enero, según los libros del banco. Todas las obligaciones impuestas a instituciones, corporaciones y compañías, fuera de los bancos incorporados con arreglo a las leyes de Puerto Rico, o a sus oficiales, en cuanto a llenar y devolver planillas, presentar estados bajo jura-

mento o en otra forma, serán aplicables igualmente a los bancos descritos en este artículo y a los oficiales de los mismos.''

Alega o admite el Tesorero al hacer su tasación original, sea como fuere el caso, que solamente tuvo en cuenta la propiedad material de la Fajardo Sugar Company, la cual se compone de terreno, edificios de maquinaria, mejoras, hipotecas, arrendamientos, puentes, efectivo y otras cosas incluyendo los créditos alegados objeto de este pleito. No estando conforme la demandante con la tasación hecha originalmente por el Tesorero, apeló para ante la Junta de Revisión e Igualamiento siendo los fundamentos de la apelación que la valoración hecha sobre la maquinaria había sido aumentada por el Tesorero en la suma de $427,627, sin tomar en consideración su valor actual, y que el Tesorero de igual modo había tasado los anticipos, préstamos y otros créditos en la suma de $1,500,785, habiendo tasado también las acciones de capital no situadas en Puerto Rico en la suma de $586,500.

La Junta de Revisión e Igualamiento valoró en conjunto la propiedad de la Fajardo Sugar Company en la suma de $3,000,000. La forma en que precisamente dicha junta llegó a la referida suma de $3,000,000, no aparece claro en absoluto de los autos, lo que ha sido así admitido por el Tesorero. Alega el apelante y funda su principal argumento en la alegación de que la Junta de Revisión e Igualamiento tasó la propiedad con arreglo al capital en acciones, descontando el importe del capital empleado en negocios fuera de Puerto Rico. Sostiene que para este fin fué tomado el capital en acciones de la compañía por un valor de $2,569,818 los bonos en $400,000, las ganancias a repartir en $587,101, y el superávit y fondo de seguro calculado en 50,000, formando un total de $3,606,919, de cuya suma dedujo la junta la cantidad de $606,919, como capital empleado en otras partes, quedando en números redondos para ser tasada, la suma de $3,000,000.

La compañía en su apelación solicitó una rebaja de los $427,627 en que se aumentó la maquinaria y en la cantidad de $1,500,785 de los créditos. La junta rebajó $357,194 de la

suma calculada por el Tesorero. Ahora pide la compañía que la contribución impuesta sobre los .$1,015,530.55 por cada semestre le sea devuelta. La suma de $1,015,530.55 es una reclamación de menos de la diferencia que resulta entre el $1,500,785, que fué reclamada originalmente por créditos y la rebaja de $357,194, hecha por el Tesorero.

De uno de los comprobantes (*exhibits*) certificados por el Tesorero, o sea el "*Exhibit* X para acompañar a F," aparece que la Junta de Revisión e Igualamiento trató de hacer la tasación tomando por base el valor del capital en acciones, etc., y no sobre el valor real de la propiedad material.

Sin embargo, en otro documento certificado por el Tesorero consta simplemente que la junta rebajó· la valoración hecha por el Tesorero de $3,357,194, a la suma total de $3,000,000.

Resolveremos primeramente una cuestión de procedimiento promovida por el apelante y luego consideraremos las facultades de la junta y lo que debe considerarse que ella hizo.

Alega el apelante en su alegato que hubo una discrepancia entre la demanda y la prueba. Expresa que la demanda se refiere a la tasación hecha por el Tesorero de Puerto Rico cuando en realidad de verdad la tasación la hizo finalmente la Junta de Revisión e Igualamiento. Opinamos que la acción de la junta es necesariamente la acción del Tesorero, primero, fundándonos en la Ley Orgánica según la cual el Tesorero es la persona designada para cobrar sumas de dinero en Puerto Rico; segundo, por haber adoptado el Tesorero los ·informes de la Junta de Revisión e Igualamiento procediendo a verificar el cobro por virtud de dicha tasación, y tercero, por razón de la ley que regula la acción de la junta la que ordena al Tesorero que corrija los libros de tasaciones para ajustarlos a la resolución de la junta la cual entregará todos los documentos y libros al Tesorero quien tendrá el deber de proporcionar un libro en el que hará constar las decisiones de la junta. Artículos 309, 310, 311 y 313 del Código Político. El Tesorero es además miembro de oficio de esta junta.

Existe también cierta analogía entre la acción de esta Junta de Revisión y la de una corte de revisión. La acción que en definitiva adopta la corte de revisión viene a ser la sentencia de la corte inferior; la acción final de la Junta de Revisión e Igualamiento es también la acción del Tesorero. Creemos, además, que el Tesorero prescindió de esta cuestión debido a la teoría de la corte sentenciadora donde esta cuestión particular referente a la discrepancia jamás fué promovida debido a la aceptación de las alegaciones y a la estipulación y proceder general de las partes en la corte inferior. Es evidente que tanto las partes como el juez de la corte inferior estaban considerando o creyeron que se encontraban considerando la cuestión relativa a si habían sido tasados indebidamente estos supuestos créditos.

La tasación hecha originalmente por el Tesorero fué sobre la propiedad material de la demandante. Es verdad, como alega el apelante, que en el certificado original de la demandante se dice que su capital en acciones ascendía a $3,000,000, pero en ese certificado no se calculaba en forma alguna el valor de ese capital en acciones, ni hizo ninguna petición el Tesorero o algún otro funcionario de que dicho capital en acciones debía ser calculado. La Junta de Revisión e Igualamiento sin dato aparente alguno fijó el valor de este capital en acciones en la suma de $2,569,818. Cómo llegaron ellos a esta suma es un misterio para todas las partes en este pleito. El apelante sostiene que se llegó a esa suma sin tomar en consideración la forma en que está empleado en Puerto Rico el capital de la compañía. Creemos firmemente que la Junta de Revisión e Igualamiento formó su idea del capital en acciones tomando realmente en consideración el valor que en realidad tenía la propiedad material de la compañía en Puerto Rico, consideración que se fundó en parte en la idea del capital en acciones de la compañía ascendente a $3,000,000. Ella no tenía ningún otro dato ante sí que no fuera el valor de dicha propiedad material en Puerto Rico, pues la tasación que hizo el Tesorero contra la cual se interpuso la alzada

y en la que había fundado la junta su decisión, solamente contenía el valor de la propiedad material, y tomando por basa la valoración hecha por el Tesorero fué que las partes hicieron sus alegaciones ante la junta. Además, convenimos con la compañía apelada en su contención de que aun cuando ésta es una tasación basada en el valor del capital en acciones de la propiedad en Puerto Rico, como el valor de dicha propiedad debe estar compuesto necesariamente del valor de la propiedad material o franquicias de la corporación y puesto que la junta no hizo la debida concesión por la propiedad que se alegó que estaba exenta, que si dicha propiedad realmente está exenta, entonces la compañía tiene derecho a que se rebaje la tasación en la suma de los créditos que alega fueron incluídos indebidamente en la tasación original del Tesorero y que no fueron considerados al parecer por la Junta de Revisión e Igualamiento. Creemos que existen bastantes constancias en los autos que indican que la acción de la junta fué meramente hacer un descuento en la cantidad fijada originalmente por el Tesorero. Estas consideraciones de este párrafo están sostenidas por el artículo 320 del Código Político citado anteriormente al expresar éste que solamente será tasada aquella parte del capital de una corporación extranjera empleado en la transacción de negocios en Puerto Rico.

A pesar del caso de *Union Central Life Insurance Co.* v. *Gromer,* arriba citado, el apelante insiste en que los créditos no están exentos por la ley. Alega que el Fiscal General de Puerto Rico, Sr. Brown, como también este tribunal al adoptar su opinión, estuvieron equivocados. El argumento es que el artículo 290 meramente expresa que los créditos estarán exentos de ser clasificados bajo el título de bienes muebles, pero que pueden, sin embargo, ser tasados los créditos, puesto que el artículo 290 dispone que sea tasada toda la propiedad. El apelante llama la atención hacia el hecho de que en la ley de 1902 también se disponía que serían tasados los créditos y que la única revisión hecha en la ley de

1904 fué para excluirlos de su clasificación como bienes mue-
bles.

Es muy general y conveniente la división de la propiedad
en inmueble y mueble. A veces los créditos o derechos de
acción no eran considerados como comprendidos en la
propiedad mueble y la ejecución o procedimiento judicial
seguido contra la propiedad mueble no comprendía a los cré-
ditos. El mero hecho de que la legislatura indique la inten-
ción de tasar toda la propiedad no hace que toda forma o
mutación de propiedad esté sujeta a tasación y con frecuen-
cia no se consideran como propiedad algunas cosas o derecho
que representan valor hasta que no sean declarados así por
la Legislatura. *Talley, County Treasurer,* v. *Brown,* 125
N. W., 248; *State of Washington, ex rel J. G. Wolfe* v. *Par-
menter,* 19 L. R. A. (N. S.), 707, donde se cita el caso de *Peo-
ple* v. *Hibernia Sav. & L. Soc.,* 51 Cal., 243, en el que se
resolvió que los créditos no eran necesariamente propiedad
de acuerdo con el precepto constitucional que exige que sea
tasada toda la propiedad. Véase también él caso de *Gleason*
v. *Thaw,* sentencia del Tribunal Supremo de los Estados Uni-
dos de fecha febrero 23, 1915. Sin embargo, generalmente
la propiedad mueble comprende los créditos, y así ha sido
declarado por las cortes; y al excluir específicamente el ar-
tículo 290 a dichos créditos debemos tener por cierto que la
intención de la Legislatura fué la expresada por ella. La
Legislatura teniendo presente que toda la propiedad mate-
rial es tasada puede que haya querido evitar una tasación
sobre los derechos a la propiedad con el fin de impedir la
doble tasación que tan frecuentemente recae sobre el mismo
comodatario en vez de sobre la persona que tiene el crédito.
El caso de la *Union Central Life Insurance Company* v. *Gro-
mer,* jamás ha sido revocado y no se funda únicamente en
la opinión del Fiscal General, sino en una consideración dete-
nida del estatuto. Siguiendo estos mismos razonamientos el
apelante insiste en el hecho de que las exenciones deben ser
interpretadas estrictamente si bien los casos en que se esta-

blece este principio son más generalmente casos de privile-
gios, como por ejemplo, de ciertos individuos, corporaciones,
juntas o instituciones de caridad, o propiedad de personas
que ha quedado exceptuada. *Wicksbury, etc., R. R. Co.* v.
*Dennis,* 116 U. S., 665; *Providence Bank* v. *Billings,* 4 Pet.,
514; 37 Cyc., 908 *et seq.*

Hablando estrictamente, la exclusión en este caso, es una
excepción u omisión a que pueda hacerse la tasación según
la diferencia indicada en el caso de *Eidman* v. *Martínez,* 184
U. S., 583.

"Es una regla antigua y familiar de las cortes inglesas aplicable.
a toda clase de contribuciones particularmente a las contribuciones
especiales, que el soberano está en la obligación de expresar su inten-
ción de fijar una contribución, en lenguaje claro e inequívoco, y que
deberá darse una interpretación liberal a las palabras que estable-
cen la *excepción,* las cuales limitan la aplicación del deber, *Warring-
ton* v. *Furbor,* 8 East, 242, 247; *Williams* v. *Sangar,* 10 East, 66,
69; *Denn* v. *Diamond,* 4 B. & C., 243, 245; *Tomkins* v. *Ashby,* 6 B.
& C., 541; *Doe* v. *Snaith,* 8 Bing., 146, 152; *Wroughton* v. *Turtle,*
11 M. & W., 561, 567; *Gurr* v. *Scudds,* 11 Exchq., 190, aunque las
palabras relativas a *exenciones* de las leyes generales que fijan contri-
buciones puedan ser diferentes. Cooley sobre Tasación, 146; In Mat-
ter of Enston, 113 N. Y., 174, 177."

Véase también el caso de *Hall Co.* v. *Commonwealth,* 215
*Mass.,* 326, y el de *Hale* v. *County Commissioners,* 137 Mass.,
111, y a Brown's Legal Maxims, página 4.

Pero ya que se considere la exclusión de los créditos con-
tenida en el artículo 290 como una exención o excepción a
la tasación, la intención de la Legislatura, según aparece de
dicho artículo, no da lugar a equivocación alguna. La inten-
ción de hacer dicha exclusión se manifiesta además en los
cambios hechos en el año 1904 en otras partes del Código
Político. En los artículos 317 y 319 del referido código que
exigen que las corporaciones deberán presentar una relación
de sus bienes muebles fué incluída la palabra "*credits*" en
1902 y omitida en 1904, fecha en que fué enmendado dicho
artículo 290. Y el mismo artículo 290 expresa que para los

fines de la tasación la propiedad inmueble comprenderá ciertas cosas y la mueble otras (excluyendo los créditos) indicando así una completa división de la propiedad que ha de ser tasada.

El apelante formula además otra alegación en este caso. Alega que estas supuestas exenciones en realidad no eran créditos sino otra cierta clase de propiedad. El fundamento de alegación es el de que estos adelantos o préstamos a las compañías azucareras, ferrocarriles y cultivadores de cañas eran en su totalidad sumas de dinero empleadas en el negocio de la Fajardo Sugar Company, la que según su misma admisión se dedica al negocio del cultivo de caña. No aparece de las alegaciones o de la prueba cuál sea la verdadera naturaleza de estos supuestos créditos. Se ha admitido que son préstamos o adelantos pero no están garantizados ni consta específicamente la naturaleza de los contratos celebrados entre la Fajardo Sugar Company y los diferentes deudores. Si estos alegados créditos eran meramente adelantos hechos por la corporación, o en otras palabras, propiedad o dinero que había salido de la custodia de la Fajardo Sugar Company, entonces muy bien podría discutirse si tales préstamos o adelantos son propiedades en poder de la corporación. Por tanto, lo que la corporación posee es un derecho a algo futuro, ya sea esto la entrega del azúcar o derecho a una indemnización en caso de que no se verifique dicha entrega.

La intención, pues, por parte de la Legislatura de tasar estos adelantos o préstamos no ha sido expresada de modo alguno en el estatuto. Hemos visto en el caso de *Eidman* v. *Martínez* y las demás autoridades que han sido citadas, que la Legislatura debe indicar claramente la intención de fijar una contribución. Si pareciera poco científico indicar que estos adelantos por virtud de los cuales las personas están en la obligación de entregar efectos o dinero a la corporación no son tasados, entonces es evidente que la medida de ese deber o los daños y perjuicios constituye un derecho debidamente clasificado por la compañía en su certificado como crédito.

Cualquier otra interpretación que no sea la de que estos préstamos o adelantos son créditos, daría derecho a la compañía a que pudiera alegar en el futuro que ellos negociaban o nó con propiedad que podía ser tasada, sino con derechos que en lo sucesivo podrían surgir y que la fecha adecuada para tasar estas cosas sería al convertirse ellas en propiedad en poder de la corporación debido a la entrega de las cosas mencionadas en los supuestos contratos. Si se considerara procedente la Legislatura tendrá una base sencilla para que puedan ser tasados estos créditos. En verdad que el artículo 290 ha estado en vigor desde el año 1904 y el hecho de que la Legislatura no haya tratado de modificarlo para hacer específica la tasación de los créditos milita en contra de la teoría sustentada por el apelante.

Hemos tenido alguna duda con respecto a si la demandante debe recobrar toda la suma reclamada puesto que se hizo otra rebaja en cierta propiedad material en las contribuciones por tasación fijadas por la Junta de Revisión e Igualamiento. Sin embargo, como la rebaja que se pidió fuera hecha era mucho mayor que la que hizo finalmente la junta, y como ésta evidentemente no tuvo en cuenta la reclamación relativa a los créditos alegados y como la cuestión entre las partes era según los autos la devolución de estos créditos *vel non*, opinamos que debe confirmarse enteramente la sentencia.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres Asociados Aldrey y Hutchison.

El Juez Presidente Sr. Hernández no formó parte del tribunal en la vista de este caso.

El Juez Asociado Sr. del Toro disintió.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. DEL TORO.

Después de un detenido estudio de todas las cuestiones envueltas en este caso, he concluído que debo disentir de la opinión de la mayoría que sirve de base a la sentencia de esta

Corte Suprema confirmatoria de la apelada, expresando por escrito las razones en que fundo mi disentimiento.

Ambas partes están conformes con respecto a la narración de los hechos ocurridos. Es la manera de apreciar esos he-chos y de aplicar la ley y la jurisprudencia, la que motiva el conflicto sometido a la decisión de las cortes.

En vez de exponer por mí mismo tales hechos, los trans-cribiré en la forma en que aparecen en la exposición del caso, por virtud del convenio celebrado al efecto por ambas par-tes interesadas.

"1. Que allá por el 12 de abril de 1905 la demandante arriba mencionada, Fajardo Sugar Company, una corporación organizada y existente bajo las leyes del Estado de New York, archivó en la Ofi-cina del Secretario de Puerto Rico una copia debidamente certificada de sus cláusulas de incorporación, incluyéndose el consentimiento para demandar y ser demandada, y fué debidamente inscrita en la Oficina del Secretario de Puerto Rico como una corporación extran-jera autorizada a hacer negocios en esta isla.

"2. Que desde aquella fecha la demandante ha sido permitida y autorizada por el Tesorero de Puerto Rico, de año en año, para ocu-parse en Puerto Rico del cultivo de la Caña de azúcar y para la ela-boración de azúcar, melao y ron, y efectivamente se ha ocupado de este negocio, teniendo su oficina principal de negocios en el pueblo de Fajardo, en esta isla.

"3. La Fajardo Sugar Company, en abril 1 de 1912, presentó al Departamento de Tesorería de Puerto Rico una planilla de cor-poración, jurada, para el año económico de 1912–13, en cuya planilla se trata de dar una completa y verdadera lista de toda la propiedad perteneciente a dicha compañía en la Isla de Puerto Rico en enero 15 de 1912, y amplias y verdaderas contestaciones a todo el interro-gatorio que se relaciona con dicha propiedad. Una copia de dicha planilla de corporación con seis *exhibits* que la acompañan, marca-dos respectivamente Exhibits 1, 2, 3, 4, 5 y 9, mencionados en ella, se adhiere a la presente, marcándose 'Exhibit A.'

"Esta planilla comprende, primero, un estado demostrativo del capital de la corporación como sigue:

"Capital en acciones, cantidad pagada_____ $3,000,000.00
Bonos, valor a la par_____ 400,000.00

Superávit y fondo de amortización (Fondo de Seguro)_    $50, 000. 00
Ganancias a repartir_____    587, 101. 24

"Esta parte de la planilla contenía una nota en el sentido de que el valor en el mercado del capital social y bonos no se podía determinar.

"La planilla entonces trataba de exponer el valor del capital de la corporación empleado en negocios en la forma siguiente:

"Valor total del capital empleado en Puerto Rico_____    $2, 413, 360. 33
"Valor total del capital empleado en otra parte_____    606, 919. 10

Total (no se hace constar en la planilla)_____    $3, 020, 279. 43

"La planilla además contenía una cuenta de la propiedad de la corporación en Puerto Rico como sigue:

"Bienes inmuebles consistentes de te-
rrenos (Exhibit No. 1)_____    $24, 300. 00
Ferrocarril (Exhibit No. 2)_____    61, 100. 00
Maquinaria para la elaboración de azú-
car (Exhibit No. 5)_____    474, 400. 00
Otras maquinarias (Exhibit No. —),
edificios _____    168, 400. 00

Total (no se hace constar en la planilla)_____    $728, 200. 00

Hipotecas (Exhibit No. 9)_____    _____
Efectivo en caja o en depósito_____    $25, 133. 30
Notas cobrables u otros créditos poseí-
dos (Exhibit No. 9)_____ 1, 077, 777. 30
Valor del capital, bonos y otras garan-
tías de otras compañías que se poseen
(Exhibit No. 9)_____    2, 500. 00
Valor de los bienes personales que se
poseen (Exhibit No. 3)_____    80, 530. 00
Material rodante (Exhibit No. 4)_____    100. 00

Total de los bienes personales_____    1, 186, 040. 60

Total general_____(sic)__ $2, 413, 360. 33

"La partida en cuanto al capital empleado en otra parte, está formada por acciones de la Fajardo Development Company, que se poseen en New York, en la cantidad de $586,500 y efectivo en depósito en New York en la cantidad de $20,419.

"4. Subsiguientemente el Tesorero de Puerto Rico tasó a la Fajardo Sugar Company, para fines de contribución para el año económico de 1912-13, y en julio 13 de 1912 envió a dicha corporación un aviso de dicha tasación, copia de cuyo aviso se hace parte de la presente, marcándose 'Exhibit B.' Dicha tasación, según aparece de dicho aviso, es como sigue:

"Terreno, 122 acres_____ $11, 800. 00
Maquinaria para la elabo-
    ración de azúcar y casa
    para la maquinaria ___ 982, 427. 00
Edificios _____ _____    88, 000. 00
Otras mejoras _____    12, 500. 00

        Total de terreno y mejoras____ $1, 094, 727. 00
Hipotecas, arrendamiento y acciones_   2, 093, 894. 00

        Total terreno, mejoras, hipotecas, arrendamien-
            tos y acciones _____ $3, 188, 621. 00
Vía, puentes, túneles, etc_____    $62, 710. 00
Material rodante_____        200. 00

        Total, ferrocarril, (no se hace constar en la
            planilla)_____    62, 910. 00
Efectivo _____    $25, 133. 00
Otros bienes personales_____     80, 530. 00

        Total _____ _____   105, 663. 00

        Total general_____ $3, 357, 194. 00

"La partida anteriormente descrita como 'Hipotecas, arrendamientos y acciones, $2,093,894' fué calculada como sigue:

"Hipotecas _____ $499, 119. 00
Acciones, *Porto Rico Progress,* una corporación organi-
    zada de acuerdo con las leyes de Puerto Rico_____    2, 500. 00
Acciones, Fajardo Development Company, una corpora-
    ción organizada de acuerdo con las leyes del Estado
    de New York_____  586, 500. 00
Notas cobrables y otros créditos:
    Préstamos sobre las cosechas _____  449, 506. 55
    Préstamos, Fajardo Sugar Growers' Association___  168, 723. 00
    Cuentas corrientes _____  197, 155. 00
    Cuenta corriente con la Fajardo Development Com-
        pany_____  200, 146. 00

"5. Subsiguientemente dicha Fajardo Sugar Company tomó apelación a la Junta de Revisión e Igualamiento, y se acompaña a la presente copia de dicha apelación, marcándose 'Exhibit C.' (Al recibirse dicha apelación en la Oficina del Tesorero, fué anotada como 'Apelación No. 821, Caso No. 322.') Los fundamentos de esta apelación eran los siguientes:

" '1. Que la valoración sobre "Maquinarias y casas para maquinarias" fué arbitrariamente elevada a la suma de $427,627, sin tener en cuenta su valor actual.

" '2. Que la valoración sobre "Hipotecas, arrendamientos y acciones," incluye las siguientes partidas, que están expresamente exentas de acuerdo con la ley (Créditos). Las partidas son:

"Anticipo sobre cosechas _____ $439, 751. 00
Préstamos a la Fajardo Sugar Growers' Association____ 168, 723. 00
Cuentas corrientes _____ 197, 155. 00
Cuenta con la Fajardo Development Company _____ 200, 146. 00
Valoración sobre acciones no situadas en Puerto Rico,
    ascendentes a_____ 586, 500. 00

"Dicha apelación fué debidamente presentada ante la Junta de Revisión e Igualamiento, junta con las planillas de contribución y valoración, según lo demuestra el certificado del Tesorero que se acompaña a la presente y se marca 'Exhibit D.'

"6. Después la Fajardo Sugar Company compareció, por medio de su abogado, y argumentó su caso ante la Junta de Revisión e Igualamiento, y luego la Junta de Revisión e Igualamiento redujo la valoración total de la propiedad real y personal tasada para el año económico de 1912–13 a la Fajardo Sugar Company de la suma de $3,357,194 a la de $3,000,000. Un aviso de esta resolución de la Junta de Revisión e Igualamiento fué debidamente enviado por el Tesorero de Puerto Rico a dicha corporación el día 30 de agosto de 1912. Copia de dicho aviso se acompaña a la presente, marcándose 'Exhibit E.'

"7. La Junta de Revisión e Igualamiento, al resolver el caso en cuestión, tuvo en cuenta que la tasación total hecha por el Tesorero de Puerto Rico en contra de la Fajardo Sugar Company para los fines de contribución durante el año 1912–13 era demasiado alta, y decidió reducir este montante según se indica anteriormente. En la discusión ante la junta se sugirió que la corporación estaba debidamente sujeta a la contribución sobre el montante del capital empleado en negocio en Puerto Rico, y que el montante del capital así empleado en Puerto Rico podría propiamente obtenerse totalizando, a un valor

razonable, su capital en acciones, bonos, superávits y ganancias a repartir (fondo de seguro), y deduciendo de ello la cantidad de $606,919, que la compañía alega que es el capital empleado en negocios fuera de Puerto Rico. Para estos fines, el capital en acciones de la corporación fué calculado en la suma de $2,569,818.

"Que la junta finalmente resolvió este caso sencillamente reduciendo el montante de la valoración de $3,357,194 a $3,000,000; y que se resolvió fijar dicha tasación valorando los bonos, superávits y ganancias a repartir, de la Fajardo Sugar Company, descontando el importe del capital empleado en negocios en otras partes fuera de Puerto Rico. Para este fin los bonos fueron tomados por un valor a la par de $400,000 y las ganancias a repartir fueron calculadas en $587,101, y el superávit y fondos de amortización (fondo de seguro) fué calculado en $50,000 y se dió un valor de $2,569,818 al capital de dicha corporación y de este total se dedujo la cantidad de $606,919, cuya suma es el capital que la corporación dice tiene empleado en otras partes, quedando en número redondos la suma de $3,000,000.

"8. El día 2 de septiembre de 1912, dicha Fajardo Sugar Company pagó la suma de $18,000.01 como contribuciones tasadas sobre la base de $3,000,000, siendo aquella suma el primer plazo de las contribuciones para el año económico de 1912–13, de cuya cantidad se pagaron por la Compañía,—bajo protesta,—$6,093.19. El día 28 de febrero de 1913, dicha Fajardo Sugar Company pagó una cantidad de dinero igual, estableciendo análoga protesta, siendo dicho pago el segundo plazo de las contribuciones para el año económico de 1912–13, basándose dichas protestas en el hecho de que la propiedad tasada consistía de créditos en cuentas corrientes, pagarés, y otros créditos personales legalmente exentos de contribución, como sigue:

" '(1) Anticipos, préstamos y cuenta corriente con la Fajardo Sugar Growers' Association, ascendentes a setecientos cuarenta y tres mil trescientos ochenta y tres dólares, setenta y nueve centavos ($743,383.79).

" '(2) Cuenta corriente con la Fajardo Development Company, ascendente a doscientos mil, ciento cuarenta y seis dólares, setenta y seis centavos ($200,146.76).

" '(3) Pagarés y documentos a cobrar, ascendentes a setenta y dos mil dólares ($72,000).'

"Copias de las dos protestas a que nos referimos se acompañan a la presente, y se marcan, respectivamente, 'Exhibit G' y 'Exhibit H.'

"9. El día 15 de enero de 1912, la Fajardo Sugar Company poseía la siguiente propiedad:

" '(1) Anticipos, préstamos y cuenta corriente con la Fajardo Sugar Growers' Association, ascendentes a setecientos cuarenta y tres mil, trescientos ochenta y tres dóllars, setenta y nueve centavos ($743,383.79).'

"Esta suma estaba formada de dinero de refacción adelantado anteriormente a la Fajardo Sugar Growers' Association, una asociación por acciones, no incorporada, organizada de acuerdo con las leyes del Estado de New York, y que se ocupaba en el cultivo de la caña de azúcar en Puerto Rico.

· " '(2) Cuenta corriente con la Fajardo Development Company, ascendente a doscientos mil, ciento cuarenta y seis dólares, setenta y seis centavos ($200,146.76).' ·

"Esta cantidad consistía de dinero adelantado anteriormente a la Fajardo Development Company, una corporación organizada bajo las leyes del Estado de Connecticut, y que se ocupaba en la explotación de un ferrocarril en Puerto Rico como portador público de cargas y pasajeros, cuyo ferrocarril se extiende desde el Municipio de Naguabo, vía Fajardo, hasta el Barrio de Mameyes. Dichos anticipos consistían de un sobrante de préstamos sin pagar, hechos de tiempo en tiempo, desde la organización de la Fajardo Development Company hasta el 15 de enero de 1912 para la construcción y mantenimiento del ferrocarril.

" '(3) Pagarés y documentos a cobrar, ascendentes a setenta y dos mil dólares ($72,000).'

"Estos pagarés son créditos varios contra residentes de Puerto Rico, adquiridos por la Fajardo Sugar Company en el curso de su negocio. La Fajardo Sugar Company, el día 15 de enero de 1912, no poseía garantía de ninguna clase para ninguno de los créditos mencionados en este párrafo."

Conocidos los hechos, veamos si, de acuerdo con la ley y la jurisprudencia, la cantidad de $12,186.37 ha sido o nó cobrada ilegalmente a la demandante por concepto de contribuciones.

A. La primera cuestión que debe considerarse es la de si los "créditos" en general están o nó exentos del pago de contribuciones en Puerto Rico. Esta Corte Suprema en el caso de *The Union Central Life Ins. Co.* v. *Gromer,* 19 D. P. R., 900, resolvió que lo estaban. Intervine en la decisión de dicho

caso y disentí de la opinión de la mayoría, pero no expresé las razones de mi disentimiento. Lo haré ahora.

Desde 1900 en que se aprobó nuestra ley de rentas, conocida generalmente con el nombre de *bill* Hollander, hasta 1904, no hubo cuestión alguna con respecto a que los créditos personales o hipotecarios, estuvieran exentos del pago de contribuciones. Dichos créditos eran tasados y sus dueños pagaban la contribución correspondiente. Fué con motivo de ciertas enmiendas hechas a la ley en 1904, que surgió el conflicto. Dichas enmiendas consistieron en haberse excluído los créditos en cuentas corrientes, pagarés, y otros créditos personales, de la clasificación de ''bienes muebles'' contenida en el artículo 290 del Código Político y otras que guardan estrecha relación con la indicada.

Estoy convencido de la fuerza y de la lógica de los razonamientos consignados por el Juez MacLeary al emitir la opinión de la corte en el caso citado de *The Union Central Life* v. *Gromer*. Si fuera posible por inferencias llegar a la conclusión de si están o nó exentos los créditos del pago de contribuciones por virtud de las enmiendas de 1904, contestaría que lo estaban; pero a mi juicio a tal conclusión no puede llegarse por inferencias, sino que es necesario que el legislador declare la exención expresamente. En ninguna parte de la Ley de Rentas se consigna expresamente que los créditos están exentos del pago de contribuciones, y tanto en 1900, como en 1904, como hoy, la dicha Ley de Rentas contenía y contiene el precepto que sigue: ''Que toda propiedad no exenta expresamenté del pago de contribuciones será tasada como imponible.'' Véase el citado artículo 290 del Código Político. Si la Legislatura de Puerto Rico quiso eximir del pago de contribuciones a los créditos que antes consideró como imponibles, debió haberlo hecho expresamente de acuerdo con la regla sentada y seguida por ella misma. Artículo 291 del Código Político.

En el caso de *Vicksburg & Pacific R. Co.* v. *Dennis,* 116

U. S., 665, 667, 668, la Corte Suprema de los Estados Unidos, se expresó así:

"En el muy importante caso de *Providence Bank* v. *Billings*, 4 Pet., 514, el Juez Presidente Marshall, al tratar de la renuncia parcial de imponer contribuciones hecha por el Estado en la carta constitutiva de una corporación, se expresó como sigue: 'Que el poder de fijar contribuciones es de importancia vital y esencial a la existencia del gobierno, es una verdad acerca de la cual no es necesario insistir.' 'Como toda la comunidad está interesada en conservarlo íntegro, tiene ésta derecho a persistir en el hecho de que no debe presumirse que ha sido abandonado cuando no se revela el propósito deliberado del Estado de renunciarlo.' 'Debemos buscar la exención en el lenguaje del instrumento y de no encontrarla en él sería una extralimitación de nuestra parte incluirla mediante interpretación.' 4 Pet., 561–563.

"En el caso de *Philadelphia & Wilmington Railroad* v. *Maryland*, 10 How., 376, el Juez Presidente Sr. Taney, dijo lo siguiente: 'Esta corte ha declarado en varias ocasiones que la facultad del Estado para fijar contribuciones nunca deberá presumirse que ha sido renunciada, a menos que aparezca expresamente en términos claros e inequívocos la intención de renunciarla.' 10 How., 393.

"En las decisiones subsiguientes ha sido mantenido estrictamente igual principio en el que constantemente se ha insistido en distintas formas de lenguaje. Se ha dicho que 'ni el derecho a imponer contribuciones, ni ninguna otra facultad de la soberanía entenderá esta corte que han sido renunciados, a no ser que tal renuncia resulte expresada en términos que sean demasiado claros para ser equivocados;' que 'no puede privarse de nada al Estado por presunción o inferencia'; cuando se alega la renuncia deberá ésta quedar establecida en lenguaje claro y que no admita dudas, que no sea suceptible de ninguna interpretación razonable compatible con la retención de dicha facultad; si surgiere duda respecto a la intención de la Legislatura, deberá resolverse a favor del Estado'; que un Estado no puede ser privado de este atributo tan grande de la soberanía tomándose en consideración en lenguaje ambiguo; que cualquier contrato de exención 'debe ser estrictamente considerado, sin que jamás se permita que se extralimite en su alcance o duración de los requisitos claramente exigidos en la concesión'; y que tales exenciones se consideran 'en desdoro de la autoridad soberana y el derecho común y por tanto, que no han de ir más allá de los requisitos

exactos y precisos de las concesiones interpretadas *strictissimi juris.'* * * *."

Y en el de *Davenport Nat. Bank* v. *Mittelbuscher,* 15 Fed., 225, 228, la Corte de Circuito de Iowa, S. D., dijo:

"Está ahora bien establecido que generalmente las acciones de capital de las corporaciones en Iowa están sujetas a la imposición de contribuciones. *Cook* v. *Burlington, supra.* Si el capital de los bancos de economías está exento en absoluto, debe ser por virtud de las prescripciones arriba citadas. Como hemos visto no resulta de modo claro que tal sea el efecto de esa sección. Es una regla sana y bien establecida en la interpretación de leyes de rentas, que 'si la propiedad que está sujeta a tasación con arreglo a un estatuto anterior y general ha de quedar exenta de conformidad con una ley posterior de su parte proporcional de contribución en el sostenimiento de los gastos públicos, deberá basarse dicha exención en alguna disposición clara e inequívoca del estatuto.' "

Pero aun aceptando como enteramente correcta la interpretación que la mayoría de los jueces de esta Corte Suprema ha dado a la Ley de Rentas, a los efectos de concluir que los créditos a partir del año de 1904 quedaron exentos del pago de contribuciones en Puerto Rico, aun así, debe revocarse, o al menos modificarse, a mi juicio la sentencia recurrida.

B. Este caso no es enteramente igual al de *The Union Central Life Ins. Co.* v. *Gromer, supra.* Aceptando que podamos entrar a clasificar las partidas componentes de la suma de tres millones de pesos sobre la cual se impuso y cobró finalmente la contribución, encontraremos entre ellas, por ejemplo, la de "anticipo sobre cosechas" ascendente, según la misma demandante, a $439,751, y que, de acuerdo con el criterio sustentado por la mayoría de los jueces de esta corte, debe considerarse exenta del pago de contribuciones.

Si se adopta la teoría de penetrar en la intención del legislador a los efectos de concluir que por virtud de sus enmiendas de 1904 eximió a los créditos del pago de contribuciones, ese mismo criterio debe seguirse para fijar la naturaleza de los créditos exentos.

Para establecer la intención del legislador, se ha sostenido que no quiso tasar dos veces una misma propiedad, esto es, que no quiso imponer una doble contribución. Así, antes de 1904, al tasarse una finca hipotecada, se descontaba el valor de la hipoteca. El propietario de la finca pagaba contribuciones por la diferencia entre el valor real de la finca y el de la hipoteca y el dueño de ésta por el valor de su crédito. A partir de 1904, a virtud de las enmiendas a la Ley de Rentas, cuando se tasa una finca hipotecada a los efectos de la imposición y cobranza de contribuciones, no se descuenta el valor de la hipoteca y el dueño viene obligado a pagar contribuciones calculadas sobre el valor total de la finca sin descuento alguno. De ahí que se deduzca, lógicamente en verdad, que para evitar lo que pudiera resultar en la práctica una doble tasación, no deba continuarse a partir de 1904 cobrando contribuciones al dueño del crédito hipotecario.

Pero el caso de los anticipos para cosechas es completamente distinto. Tanto antes de 1904 como después de esa fecha "estarán exentos de tributación * * * los frutos por cosechar y productos de la tierra que sean precisamente propiedad del productor y mientras estén en poder de éste." Artículo 291 del Código Político, enmendado en 1904. De suerte que, de acuerdo con el anterior precepto y con la interpretación que a la Ley de Rentas según fué enmendada en 1904, ha dado la mayoría de los jueces de esta Corte Suprema, la suma de $439,751 perteneciente a la Fajardo Sugar Company y por ella prestada a la Fajardo Sugar Growers' Association en concepto de "anticipos sobre cosechas," ni paga contribución invertida en la cosecha de cañas dulces por la corporación deudora, ni tampoco considerada como capital de la corporación acreedora. Dicha suma escapa, pues, en absoluto, al pago de contribuciones, y ésta no pudo ser, a mi juicio, la intención de la Legislatura.

C. Pero hay más. Si bien es cierto que la tasación hecha por el Tesorero tuvo por base la expresada en el hecho 4,

también lo es que se apeló de esa tasación para ante la Junta de Revisión e Igualamiento, que ésta oyó la apelación y que en la discusión del recurso "se sugirió que la corporación estaba debidamente sujeta a la contribución sobre el montante del capital empleado en negocios en Puerto Rico, y que el montante del capital así empleado en Puerto Rico podría propiamente obtenerse totalizando a un valor razonable, su capital en acciones, bonos, superávits y ganancias a repartir (fondo de seguro), y deduciendo de ello la cantidad de $606,919, que la compañía alega que es el capital empleado en negocios fuera de Puerto Rico. Para estos fines el capital en acciones de la corporación fué calculado en la suma de $2,569,818.''

El procedimiento seguido por la junta fué distinto del adoptado por el Tesorero, y esto no obstante, el adoptado por el Tesorero es el que en realidad de verdad ha venido sirviendo de base a las conclusiones establecidas al discutirse y resolverse el recurso.

No puede negarse que a partir del 9 de marzo de 1911, por virtud de las prescripciones de la ley No. 35, disponiendo el pago de contribuciones bajo protesta, se puede recurrir a los tribunales en el caso del cobro de una contribución ilegal aun cuando dicha contribución hubiera sido sancionada por la Junta de Revisión e Igualamiento, pero para ello es necesario que se determine con toda claridad en qué consiste la contribución ilegal cobrada, distinguiéndola y fijando con toda exactitud el montante de la misma. Y esto no se ha hecho, a mi juicio, en el presente caso.

D. Por último, aun cuando debiera concluirse que todas las cantidades especificadas en la demanda, ascendentes a más de un millón de pesos, estaban exentas del pago de contribuciones, la justicia y la equidad requerirían de consuno que de ella se dedujera la suma de $357,194 que rebajó la Junta de Revisión e Igualamiento a virtud de la apelación interpuesta por la corporación demandante, pues atendidas todas las circunstancias concurrentes, no encuentro ninguna

que justifique la teoría de que la intención de la junta fuera
la de rebajar dicha suma del valor en que se tasaron por el
Tesorero las ''maquinarias y casas ·para maquinarias'' de
la Fajardo Sugar Company.

Tales son, expuestos a grandes rasgos, los motivos en que
fundo mi disentimiento.