SAURÍ & SUBIRÁ, DEMANDANTES Y APELANTES, *v.* CHARLES F. HILL, TESORERO AUXILIAR, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de Ponce en pleito sobre devolución de contribuciones.

No. 1758.—Resuelto en julio 18, 1918.

DEVOLUCIÓN DE CONTRIBUCIONES.—En este caso Saurí & Subirá, dueños de maquinaria para la elaboración de azúcar y del edificio en que está montada dicha

maquinaria, pagaron contribuciones al Gobierno Insular en el ejercicio de 1914–15 sobre dichos bienes bajo un valor en tasación de $22,470. A principio de 1915 Saurí & Subirá fijaron espontáneamente el valor de los mismos bienes a los efectos del pago de contribuciones de 1915–16 en la suma de $32,470. En 21 de abril de 1915 el Tesorero de Puerto Rico notificó a Saurí & Subirá que la tasación de los bienes expresados había sido fijada por la Tesorería de P. R. en la suma de $153,280, de cuya tasación apelaron Saurí & Subirá a la Junta de Revisión e Igualamiento, la cual sostuvo la tasación oficial hecha. Saurí & Subirá pagaron bajo protesta la suma correspondiente al primer semestre de contribuciones después que fué aumentada la tasación, así como la cantidad exigida por recargo; y habiendo entablado pleito contra el Tesorero en la Corte de Distrito de Ponce, suplicó a ésta declarara que la contribución y recargo satisfechos fueron indebida e ilegalmente cobrados y procedía el correspondiente reintegro al demandante. La corte inferior dictó sentencia declarando sin lugar la demanda y de ese fallo apeló la demandante para ante esta Corte Suprema alegando como único motivo del recurso, que la sentencia no está sostenida por la prueba.

*Se resolvió,* después de un examen detenido de las pruebas, que los demandantes no han demostrado que la contribución pagada bajo protesta sea tan claramente excesiva que les haya producido una verdadera e inequívoca opresión que equivalga a una injusticia clara y sustancial de que deban obtener reparación mediante la acción ejercitada, según requiere la jurisprudencia ya establecida por esta Corte Suprema en el caso de *The Ensenada Estates, Inc.,* v. *Hill,* 24 D. P. R. 520.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. A. F. Castro.*

Abogados del apelado: *Sres. Howard L. Kern, Attorney General,* y *Salvador Mestre, Fiscal.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

El presente es un pleito sobre devolución de contribuciones pagadas bajo protesta.

Los hechos que la parte demandante alega como fundamentales de su acción son los siguientes:

Que la demandante Saurí & Subirá, es dueña de los siguientes bienes situados en el municipio de Ponce, a saber: (*a*) maquinaria para la elaboración de azúcar compuesta de un tren mixto antiguo, con batería antigua, y de un tacho; y (*b*) un edificio, dividido en dos, construído parte de mampostería, en que está instalada la maquinaria, y parte de madera y zinc.

Que tales maquinarias y edificios habían venido tasándose anualmente por el Tesorero de Puerto Rico a los efectos del pago de contribuciones insulares, y la tasación mayor hecha fué fijada en la suma de $22,470, la que sirvió de tipo para la contribución correspondiente al año económico de 1914–1915.

Que a principios del año 1915 la demandante declaró el valor de dichos bienes para los efectos del pago de contribuciones de 1915–1916 fijándolo en la suma de $32,470.

Que el Tesorero de Puerto Rico sin que precediera tasación alguna de los bienes de que se trata o sea una estimación de su valor previa la debida inspección hecha por dicho funcionario personalmente o por medio de algún agente o empleado, notificó a la demandante en 21 de abril de 1915, por medio del tasador C. H. Mead la tasación fijada en la suma de $153,280 con advertencia de que sería firme si no se apelaba de ella en el término legal para ante la Junta de Revisión e Igualamiento, como en efecto apeló la demandante, habiendo dicha junta sostenido la tasación hecha.

Que según información y creencia de la demandante, de la expresada suma de $153,280, $150,000 representaban el valor de la maquinaria y los $3,280 restantes el valor del edificio, habiéndose tomado como base para el valor de la maquinaria su capacidad productora que se supuso ser la de 300 toneladas de cañas diarias tomándose como tipo la suma de $500 por cada tonelada de cañas diariamente molida.

Que por virtud del valor así fijado para los bienes de que se trata, se impuso una contribución anual ascendente a $1,992.64, o sean $996.32 el semestre, cuya contribución considera injusta e ilegal la demandante por las siguientes razones: (*a*) porque no ha precedido tasación alguna de la propiedad para los efectos de la imposición de la contribución según requiere la ley; (*b*) porque no se ha tomado como

base para la imposición de la contribución el valor de los bienes en el mercado y sí la capacidad productora de la maquinaria; (*c*) porque según informes y creencia de la demandante se fijó la capacidad productora de la maquinaria en 300 toneladas de azúcar diarias sin base alguna para ello; (*d*) porque el real y verdadero valor de los bienes en el mercado es mucho menor que el declarado por la demandante para los efectos de la contribución o sea la suma de $32,470; (*e*) porque la verdadera capacidad productora de toda la maquinaria, apreciada en conjunto que es como necesariamente ha de funcionar es de 115 toneladas de azúcar diarias.

Que la demandante fundó su recurso de alzada para ante la Junta de Revisión e Igualamiento en las mismas razones anteriormente expresadas.

Que la demandante se negó a pagar voluntariamente la contribución, pero habiéndose ordenado el embargo de los bienes sobre que había sido repartida y practicádose el embargo, se vió obligada para evitar su venta a pagar el primer semestre de la contribución ascendente a la suma de $996.32 más $39.86 que se le cobraron como recargo, cuyos pagos verificó bajo protesta el día 9 de diciembre de 1915, por estimar la contribución injusta e ilegal en cuanto al exceso del verdadero valor de los bienes o sea en cuanto a la suma de $1,575.34 de la contribución anual o $787.67 de la cantidad correspondiente al primer semestre que con los $39.86 de recargo indebidamente cobrado hacen un total de $827.53.

La demanda concluye con la súplica de que se dicte sentencia declarando que el cobro de la contribución pagada, en cuanto a la suma de $827.53, incluyendo el recargo, fué indebido e ilegal y decretando la devolución de dicha cantidad a la demandante.

El demandado contestó la demanda negando ciertos hechos, admitiendo otros y alegando materia nueva de oposición a la demanda.

Celebrado el juicio, la parte demandante, como resultado de la prueba practicada hizo la siguiente admisión:

"El abogado de la parte demandante hace contar en este momento que los señores Saurí & Subirá, en vista del resultado de la prueba, aceptan como valor justo y razonable de su maquinaria para los efectos de la tasación, para la contribución del año económico de 1915–1916, la suma de $50,000 calculando a $500 por cada tonelada diaria de molienda."

La corte dictó sentencia en 19 de julio de 1917 por la que declara sin lugar la demanda en todas sus partes, sin especial condenación de costas, desembolsos y honorarios de abogado.

Contra la anterior sentencia interpuso la representación de Saurí & Subirá recurso de apelación para ante esta Corte Suprema y alega como único motivo del recurso que la corte inferior incurrió en error manifiesto al apreciar la prueba practicada en el caso especialmente por no haber prueba alguna que justifique un fallo adverso.

Traigamos a examen las pruebas practicadas.

Para los efectos de la contribución de 1915–1916 Saurí & Subirá presentaron un informe al Tesorero en un pliego impreso suministrado por la misma Tesorería, cuyo pliego ha venido al juicio como prueba y en ese pliego la parte referente a los molinos y su capacidad aparece transcrita así:

"*Molinos.*—No. 2; fabricante: Fletchard; número de masas: 3 cada uno; capacidad por 24 horas: 300 cada uno; tamaño de las masas: diámetro: 3 pies cada uno; largo: 6 pies cada uno; valor: $4,000  *  *  *  $8,000."

Al pie del mismo pliego se encuentra la siguiente información pedida a Saurí & Subirá y suministrada por éstos a Tesorería:

"Caña molida—período de molienda y caña producida durante la zafra que terminó en 1914.

"Toneladas de cañas molidas: 17,000.

"Fecha del comienzo de la molienda: Diciembre 10, 1913;

"Fecha en que terminó la molienda: Junio 26, 1914.

"Número total de horas que los molinos estuvieron en operación: 1,400.

"Número total de toneladas de azúcar producida: 1,700.

"Cantidad vendida en la isla: toda."

Declara Noah Shepard, Jefe del Negociado de Contribuciones en el Departamento de Finanzas del Gobierno de Puerto Rico, que a los efectos de las contribuciones de 1915-1916 se hizo una variación en el tipo de valoración adoptándose como uno de los factores determinantes de la valoración el tipo de $500 por cada tonelada diaria de molienda, pero no como base única. pues había además otras bases que se tenían en cuenta para la valoración, cuales son las varias piezas de maquinaria necesarias para constituir una fábrica de azúcar andando, el precio del costo de ellas puestas en Puerto Rico, el valor de construcción, la capacidad de la maquinaria, la ganancia realizable, la facilidad de comunicaciones, los contratos que tiene o el negocio que puede controlar, el fácil acceso de la factoría a los muelles y ferrocarriles, la situación de la fábrica, la clase de cañas y la calidad del terreno, y que a los efectos de la tasación de la factoría de que se trata se estimó que tiene una capacidad productora de 300 toneladas de cañas diarias de molienda en 24 horas.

Rafael Saurí, encargado de la fábrica de azúcar de Saurí & Subirá declara que los molinos de la fábrica tienen realmente 300 toneladas de capacidad por 24 horas y así lo notificaron al Tesorero de Puerto Rico, pero no pueden desarrollar toda su capacidad porque las evaporadoras y demás accesorios de la maquinaria no lo permiten pudiendo los molinos trabajar solamente durante un promedio de 8 horas durante las cuales muelen como promedio 100 toneladas de caña y entonces tienen que parar para poder evaporar y

seguir todo el proceso de la evaporación; que la capacidad
de 300 toneladas consignada en el informe al Tesorero fué
en relación con el molino sólo y no para toda la planta porque
ésta no puede moler más de las 100 toneladas; que la zafra
duró de diciembre 10 hasta junio 26 durante cuyo tiempo
molieron 7,000 toneladas de azúcar en 1,400 horas, sin huelga
alguna, funcionando el molino de 6 a 8 horas cada día na-
tural de 24 horas; que el resto de las 24 horas lo empleaban
evaporando y haciendo azúcar y que si se redujeran las horas
empleadas en la zafra a días de 24 horas resultarían 58 días.

Julio Conesa, ingeniero, declaró conforme con el testigo
Saurí que aunque los molinos tienen 300 toneladas de capa-
cidad no pueden hacer toda su producción porque los ejes
que tienen no son los propios y si tuvieran accesorios ade-
cuados a su capacidad pudieran moler aquella cantidad pero
que el resto de la maquinaria no puede hacerlo ni podrían
hacer la cantidad de azúcar que ellos pueden producir; que
considerando los aparatos de evaporación, la clase de caña
que se estaba moliendo en el primer semestre del año 1915
en el día que se hizo el informe para el Tesorero de Puerto
Rico, porque hay época en que la caña tiene una gran can-
tidad de agua en que necesita mayor evaporación y hay otras
en que es mayor la sucrosa con menos agua en la caña y con
más facilidad para hacer el azúcar, se puede calcular como
promedio de 80 a 120 toneladas por día, según la marcha
de los aparatos, si no hay algún trastorno que pueda impe-
dirlo; que la planta montada, como maquinaria vieja no tiene
valor alguno; y que vendida como hierro podría tasarse en
20 ó 30,000 pesos pero bajo el punto de vista de la necesidad
para moler cañas cree que podría valer en un momento dado
hasta $150,000; y que el justo valor de la maquinaria no
pasa de $30,000 comparando con la maquinaria moderna y
con relación a época en que la maquinaria estaba a bajo
precio.

El testigo N. I. Stacy, ingeniero de construcción mecánica, declara que ha examinado repetidas veces la maquinaria de que se trata y no le ha sido posible hacer una estimación de su valor pues se encuentra en un estado tal que de un momento a otro puede romperse; que la trasmisión está tan gastada que no se puede decir la presión que debe llevar; que la tubería está muy fina, no se sabe si el ácido la ha corroído y no se puede limpiar como corresponde debido a que si se le saca la escama que tiene quedaría con un espesor muy pequeño; que valoraría la maquinaria como hierro o desperdicios pues no puede dar su opinión sobre lo que podría valer como maquinaria para trabajar y que la considera como maquinaria para botarla y que para poder apreciar el valor de cualquier clase de maquinaria en Puerto Rico para la elaboración de azúcar se necesitaría saber lo que da esa maquinaria y la cantidad de caña que muele.

Hemos extractado toda la prueba documental y testifical aportada al juicio y en vista de ella no podemos estimar que la corte inferior cometió error manifiesto en su apreciación, ya que no obró influída por pasión, prejuicio o parcialidad.

Alega la parte apelante para sostener su teoría de que la tasación es injusta por ser excesiva, que si bien los molinos de su maquinaria tienen capacidad para 300 toneladas de caña en 24 horas, que a razón de $500 por cada tonelada darían una producción total diaria de $150,000, el resto de la planta solamente puede contribuir a la elaboración de 100 toneladas diarias que a razón de $500 la tonelada, dan un total de $50,000 cuya suma debe ser la justa valoración de toda la fábrica para los efectos contributivos.

La anterior conclusión de la parte apelante sería aceptable si el único factor tenido en cuenta para la valoración hubiera sido la capacidad de los molinos y no hubieran in-

fluído en ella los demás factores que en su declaración explica Noah Shepard, Jefe del Negociado de Contribuciones, a saber: las varias piezas de maquinaria necesarias para constituir una fábrica de azúcar, el precio del costo de ellas puestas en Puerto Rico, el valor de construcción, la capacidad de la maquinaria, el lucro realizable, el negocio que puede controlar, el fácil acceso de la factoría a los muelles y ferrocarriles, la situación de la fábrica, la clase de cañas y la calidad del terreno. No se ha demostrado que aún teniendo en cuenta esos factores la tasación no debió exceder de $50,000 según pretende el demandante. Acaso esos mismos factores influyeron en la mente de Saurí & Subirá para que la maquinaria que en el año económico de 1914–1915 sólo tenía un valor de $22,470 fuera apreciada por ellos mismos para el año económico 1915–1916 en $32,470 y aceptaran en vista del resultado de las pruebas como valor justo y razonable de la maquinaria la suma de $50,000 a los efectos de la tasación para la contribución de dicho año económico de 1915–1916 calculando a $500 la tonelada diaria de molienda. No es posible pretender que para calificar de injusta una tasación se impugne uno de los factores de la misma y se prescinda de los demás. El testigo de la demandante, ingeniero Julio Conesa, afirma que la maquinaria en cuestión vendida como hierro podía tasarse en veinte o treinta mil dollars, pero bajo el punto de vista de la necesidad para moler cañas cree que en un momento dado podía valer hasta $150,000.

Interpretando la Ley No. 35 de 9 de marzo de 1911, al resolver el caso *The Ensenada Estates, Inc.,* v. *Hill,* 24 D. P. R. 520, dijimos:

"No queremos deducir que toda valoración excesiva en ausencia absoluta de otras circunstancias sería suficiente para sostener una

acción sobre cobro de contribuciones; pero sí creemos que si la valoración final hecha por la Junta de Revisión e Igualamiento, ya considerada aisladamente, o como en el caso de autos, en unión de otras circunstancias, es tan claramente excesiva que produzca una verdadera e inequívoca opresión que equivalga a una injusticia clara y sustancial, entonces no debe negarse el acceso a las cortes al contribuyente que protesta de acuerdo con nuestro estatuto simplemente porque no puede demostrar fraude o propósito deliberado por parte de los tasadores, o porque la acción de la junta no es técnicamente ilegal o claramente contraria a algún estatuto. Y sostenemos, además, que si un demandante puede demostrar semejante injusticia sustancial, entonces la corte sentenciadora puede examinar y revisar la acción tomada por la Junta de Revisión e Igualamiento en tanto sea necesario para averiguar si las contribuciones en cuestión en realidad y según el sentir de la ley fueron cobradas o no injusta o ilegalmente y si deben ser reintegradas.''

Saurí & Subirá han tenido acceso a la corte de justicia de Ponce y no han demostrado ante ella que la contribución pagada bajo protesta sea tan claramente excesiva que les haya producido una verdadera e inequívoca opresión que equivalga a una injusticia clara y sustancial de que deban obtener reparación mediante la acción ejercitada ante dicha corte.

Es jurisprudencia establecida por esta Corte Suprema que la apreciación de las pruebas hecha por la corte sentenciadora no será revocada en apelación a menos que exista pasión, prejuicio o parcialidad o se haya cometido error manifiesto, y ninguno de esos motivos concurre en el presente caso.

Es de confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.