DEOGRACIAS VIERA RODRÍGUEZ, demandante y apelante, *v.* MANUEL V. DOMENECH, TESORERO DE PUERTO RICO, ETC., demandado y apelado.

Núm. 7411.—*Sometido:* Marzo 18, 1938. *Resuelto:* Junio 16, 1938.

*Bolívar Pagán,* abogado del apelante; *Hon. Procurador General B. Fernández García y M. Rodríguez Ramos, Subprocurador,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El presente es un pleito sobre devolución de contribuciones pagadas bajo protesta.

El Tesorero de Puerto Rico a los efectos de la imposición de contribuciones, tasó una finca de cuarenta cuerdas situada en Hato Rey, Río Piedras, con el Hipódromo "Quin-

tana'' construído dentro de la misma, en $194,020 para el año 1928–29 y en $188,040 para el 1929–30. No conforme su dueño, el demandante Viera, una vez que agotara la vía gubernativa sin resultado, recurrió para ante la Corte de Distrito de San Juan alegando que demostró ante la Junta de Revisión e Igualamiento que su finca es de la misma clase y categoría que la en que se encuentra el Hipódromo ''Las Monjas,'' sin que exista razón para que los terrenos de la pista de su hipódromo fueran valorados a razón de 50 centavos el metro mientras los terrenos de la pista del Hipódromo 'Las Monjas' fueron valorados a razón de 20 centavos el metro y menos para que los terrenos de los solares de los edificios del Hipódromo Quintana fueran valorados a razón de $1 el metro mientras que iguales terrenos donde enclavan los edificios del Hipódromo 'Las Monjas' fueron valorados a razón de 25 centavos el metro, y que tampoco existía razón para que los terrenos de la parte exterior de la cerca del Hipódromo Quintana fueran valorados a razón de 50 centavos el metro, cuando iguales terrenos del Hipódromo 'Las Monjas' fueron valorados, unos, a razón de 25 centavos el metro, y otros a razón de 20 centavos el metro, y alega además el demandante que a pesar de haber demostrado ante la Junta de Revisión e Igualamiento, que los edificios del Hipódromo Quintana eran más viejos que los edificios del Hipódromo 'Las Monjas' y que en realidad se trataba de edificios similares, no obstante, los edificios del Hipódromo Quintana fueron valorados en la suma de $74,630, para los efectos contributivos y los edificios del Hipódromo 'Las Monjas' fueron valorados en la suma de $53,330, para los mismos efectos y los mismos años económicos.''

Y alegando además que el verdadero valor de su finca era el de $93,887, siendo, por tanto, injusta y opresiva la contribución que se le impusiera en exceso del mismo, contribución ascendente a $2,688.66 que se vió obligado a pagar como pagó bajo protesta, pidió a la corte que dictara sentencia ordenando su devolución.

Contestó el tesorero sosteniendo la validez y justicia de su actuación y alegando que:

"La parcela de 40 cuerdas de terreno que ocupa el hipódromo, es continuación o formaba parte de la urbanización llamada 'Quintaña.' cuyos terrenos están tasados uniformemente a razón de $1 el metro cuadrado.

"La pista del Hipódromo Quintana, con un ancho de 25 metros, y longitud de una milla es una magnífica obra hecha con esmero y habilidad, su base es una superficie plana, impermeable, completamente lisa, rellena con una capa de arena completamente limpia, de 10 a 12 pulgadas de espesor y, para mayor comodidad y el menor riesgo de los caballos que corran en la misma.

"La obra de esta 'pista' es única en su género en Puerto Rico. Consta de cuatro curvas y una recta de llegada que les permite a los caballos mayor ligereza y más seguridad, registrándose mejoramiento en el récord, de dos segundos, en carreras, comparado con las demás 'pistas' de otros hipódromos.

"Teniendo en cuenta el trabajo llevado a efecto, el material requerido (conducción de enorme cantidad de arena de sitios distantes) y el terreno ocupado, el valor de $1 por metro cuadrado es razonable.

"El terreno ocupado por las edificaciones está tasado a razón de $1 por metro cuadrado y es justa dicha tasación, teniendo en cuenta las razones ya especificadas. Dada la solidez del mismo y estando tasados los solares contiguos, o sea la Urbanización Quintana con la misma tarifa de $1 por metro cuadrado, no hay razón para que el terreno ocupado por los edificios del hipódromo, de mejor construcción y de mayor valor y de fines más lucrativos, que los ocupados por la urbanización, sean tasados a menos de $1 por metro cuadrado.

"En cuanto al terreno ocupado por la 'pelusse' o sea el centro del hipódromo, es idéntico al terreno usado en la urbanización, pero teniendo en cuenta el uso que le corresponde dentro del conglomerado del negocio de que forma parte, se ha tasado a un precio de 50¢ por metro cuadrado.

"Y en cuanto a las construcciones, existen dos edificios de grandes dimensiones, de concreto armado, acero y techo de zinc para acomodar a las personas que concurren a las carreras, destinados a 'campo' y 'grand stand'; 'caseta de jurado,' caseta *pool*, caseta pista, taquilla, *jockeys*, jaulas, verja y otras dependencias en buen

estado y esmeradamente cuidadas; tienen un valor en tasación en relación al valor que representan, por lo que está justificada la tasación dada en planilla.''

Fué el pleito a juicio. Un solo testigo declaró, Ramón Llobet, ingeniero civil y agrimensor, presentado por el demandante. Su declaración ocupa veinticinco páginas de la transcripción y resumiéndola bien puede decirse que toda ella gira alrededor de la diferente valoración dada a los hipódromos ''Quintana'' y ''Las Monjas'', ambos construídos bajo su dirección, y a los terrenos en los que los mismos se encuentran ubicados, y sobre el valor que personalmente da a tierras y edificaciones.

Sometido el caso definitivamente a la corte, ésta lo resolvió en contra del demandante. En su opinión se expresó así:

''En ninguna parte de la demanda se alega la comisión de alguna irregularidad al determinar el valor de las propiedades que sirvió de base para la imposición de las contribuciones; ni resulta demostrado que la tasación sea arbitraria y caprichosa. Tampoco se alega que el tesorero o la junta procedieran de mala fe o que realizaran actos de fraude o de extralimitación de autoridad o discreción administrativa. Ni hubo evidencia de que ante la junta se presentara prueba irrefutable de que la finca donde enclava el Hipódromo Quintana es de la misma clase y categoría que la finca donde enclava el Hipódromo Las Monjas, contiguo uno al otro. Quizás la tasación hecha de los terrenos y edificios que integran el Hipódromo Las Monjas sea demasiado baja, pero el error, de existir, no puede servir de base para rebajar la tasación de propiedades similares del Hipódromo Quintana. El deber de los funcionarios de la administración es el de proceder en todos los casos de la mejor manera posible dentro de la ley, corrigiendo al efecto cualquier yerro que se hubiera cometido previamente. Sin embargo, la evidencia del demandante no demuestra que la tasación del Hipódromo Las Monjas sea tan correcta que merezca ser tomada como tipo de comparación, ni que la valoración del Hipódromo Quintana sea de tal modo excesiva que dé lugar a una verdadera y manifiesta opresión que equivalga a una injusticia clara y sustancial de que deba obtener reparación mediante la acción ejercitada.''

No conforme el contribuyente, apeló, señalando en su alegato la comisión de tres errores. El primero va a los fundamentos de la sentencia y no a sus pronunciamientos. Por el segundo se impugna la apreciación de la prueba por parte de la corte de distrito y por el tercero se sostiene que dicha corte erró al dictar su sentencia declarando la demanda sin lugar. Todos pueden estudiarse conjuntamente.

■■ Comienza el apelante refiriéndose a los términos en que está redactada la Ley núm. 8 de 1927 (leyes de ese año, pág. 123) que autoriza el pago bajo protesta y el recurso subsiguiente para ante los tribunales de justicia, y sostiene que no exigen que se alegue y demuestre fraude o mala fe para tener derecho a la devolución, si que simplemente se alegue y demuestre que la tasación que sirvió de base a la imposición de la contribución cobrada y pagada bajo protesta fué injusta.

La primera ley general que autorizó los pleitos sobre devolución de contribuciones pagadas bajo protesta, fué la núm. 35 de 1911 (leyes de ese año, pág. 132). Reconoció a la parte que creyere que la contribución que se le cobrara fuera *injusta* o *ilegal* el derecho a satisfacerla bajo protesta y a recurrir a los tribunales dentro de treinta días reclamando su devolución.

Esa ley fué derogada por la núm. 17 de 1920 (leyes de ese año, pág. 125), que comenzó diciendo que cuando un contribuyente creyere que no debe pagar una contribución por ser *ilegal, excesiva* o *errónea,* podrá pagarla bajo protesta y demandar ante los tribunales la devolución de lo pagado dentro de un término de quince días.

En 1924, por la Ley núm. 9 (leyes de ese año, sesión extraordinaria, pág. 71), se derogó la Ley núm. 17 de 1920. Se conservaron las palabras *ilegal, excesiva* o *errónea* y se estableció el plazo de treinta días para la interposición del recurso para ante los tribunales.

En 1925, por la Ley núm. 84 (leyes de ese año, pág. 581), se enmendaron algunas secciones de la Ley núm. 9 de 1924,

y en 1927, ambas leyes, la núm. 9 de 1924 y la núm. 84 de 1925, fueron derogadas por la Ley núm. 8 (leyes de 1927, pág. 123) que es la que rige en la actualidad. Las palabras *ilegal, excesiva* y *errónea* quedaron eliminadas, autorizándose al contribuyente que "creyere que no debe pagar cualquiera contribución o parte de ella" a hacerlo bajo protesta y a recurrir para ante los tribunales en solicitud de su devolución *dentro del término de un año.*

Las leyes, pues, han ido haciendo cada vez más fácil y amplio el recurso iniciado en 1911 para ante las cortes, pero esto no quiere decir que en éstas las cuestiones que se susciten no deban esclarecerse y resolverse de acuerdo con los precedentes y la jurisprudencia aplicables.

Aquí, por ejemplo, el motivo único que el contribuyente alega para fundar su reclamación es que la tasación o valoración que de su propiedad se hizo a los efectos de imponerle y cobrarle la contribución fué injusta por excesiva, y nada más natural que se sigan los precedentes y la jurisprudencia sobre lo que pueden y deben hacer los tribunales cuando se les someten cuestiones de esa naturaleza.

En el caso de *Swanson* v. *Snohomish County,* 71 P. (2d) 170, decidido por la Corte Suprema del Estado de Wáshington, en 1937, se dijo que "la tasación se presume correcta y corresponde al dueño de la propiedad el probar por medio de evidencia clara y convincente que la tasación fué tan alta que tácitamente constituye un fraude." Véase también *Burke* v. *Stiles,* 18 A. 657.

La tasación se presume justa y razonable, se sostiene en *Washington Union Coal Co.* v. *Thruston County,* 2 A.L.R. 1546, y, como se dice en Cooley "On Taxation," cuarta edición, Vol. 3, Capítulo 18, sección 1199, pág. 2401, "al revisar, en lo que sea permisible los actos de la Junta de Revisión e Igualamiento, se partirá de la base de que existe la presunción en favor de que sus actuaciones son correctas . . . A aquél que se oponga corresponderá probar que la resolución (de la Junta) es errónea." Véanse *Ensenada Estates,*

*Inc.* v. *Hill, Tesorero,* 24 D.P.R. 491; *Saurí & Subirá* v. *Hill, Tesorero,* 26 D.P.R. 609; *Havemeyer* v. *Domenech, Tesorero,* 45 D.P.R. 721, 723.

Estamos conformes con el apelante en que no es necesario alegar y probar fraude o extralimitación de autoridad para obtener la devolución de la contribución pagada bajo protesta, pero, de acuerdo con todos los precedentes, resolvemos que para destruir la presunción de justas que tienen las actuaciones del tesorero y de la junta se necesita una prueba clara que convenza a la corte sentenciadora de que la tasación hecha por el tesorero y confirmada o modificada por la junta es de tal manera excesiva que la contribución impuesta de acuerdo con la misma resulta injusta en verdad, opresiva.

La experiencia demuestra lo difícil que es fijar el justo valor en el mercado de una propiedad y los diferentes criterios que sobre el particular pueden sostenerse de buena fe y por fundamentos que examinados separadamente parecen todos de peso. De ahí que para que la corte esté justificada en sustituir su criterio por el del tesorero o la junta, deba aparecer de la evidencia aportada por el demandante que existió fraude, extralimitación de facultades, base falsa o errónea o fijación de un valor tan claramente excesivo que sostenerlo equivaldría a sancionar una injusticia notoria. Y examinadas las alegaciones y la evidencia a que nos referimos al principio de esta opinión, no creemos que ése sea aquí el caso.

Si bien algunas de las manifestaciones contenidas en la opinión de la corte sentenciadora parecen exigir demasiado, surge claro de su contexto general que se colocó en el justo medio y que fué porque a virtud de la declaración del único testigo que el demandante le presentara no quedó convencida no ya de la no existencia de fraude, mala fe o falta de autoridad, si que de que la tasación fuera realmente excesiva, que desestimó la demanda. Admitiendo la diferencia entre la tasación de los dos hipódromos, como bien dijo dicha corte,

pudo la más baja ser la injusta. Y por respetable que fuera el testimonio del testigo sobre su apreciación personal del valor del terreno y de las edificaciones existentes en el mismo, sólo se trataba de una opinión frente a otra, sin que la del testigo estuviera robustecida por algún dato, hecho o fundamento tan claros que hicieran patente su superioridad sobre la opinión contraria.

Bajo esas circunstancias no es posible que prospere la apelación interpuesta que debe ser declarada sin lugar, *quedando, en su consecuencia, confirmada la sentencia recurrida.*

El Juez Asociado Señor De Jesús no intervino.