The Porto Rico Coal Co., demandante y apelante, *v.* Juan G. Gallardo, Tesorero de Puerto Rico, demandado y apelado.

No. 4492—*Sometido:* Febrero 8, 1929. *Resuelto:* Mayo 28, 1929.

*Hartzell, Kelley & Hartzell* y *R. O. Fernández,* abogados de la apelante; *Hon. Attorney General James R. Beverley* y *J. A. López Acosta* y *R. A. Gómez, Sub-Procuradores,* abogados del apelado.

El Juez Asociado Señor Texidor, emitió la opinión del tribunal.

La demandante Porto Rico Coal Company acudió ante la Corte de Distrito de San Juan, ejercitando acción contra

el Tesorero de Puerto Rico, Juan G. Gallardo, y pidiendo una sentencia en la que se ordenara al demandado que devolviera a la demandante trece mil ciento ochenta y ocho dólares y 28 centavos ($13,188.28) que se le habían cobrado injustamente por razón de contribución, y los que había pagado bajo protesta. El demandado contestó la demanda, pidiendo que ésta se declarara sin lugar.

Los hechos en este caso son los siguientes:

La Porto Rico Coal Company presentó en 9 de abril de 1924 al Tesorero de Puerto Rico la declaración de la propiedad que tenía en 15 de enero del mismo año, y a fines de contribución sobre la propiedad. Según esa declaración la Porto Rico Coal Co. tenía un capital autorizado de $750,000 en acciones de $100 cada una, habiéndose emitido $5,000, con un valor de $500,000; tenía propiedad real, propiedad personal, un sobrante y fondo de amortización; y entre los bienes, bonos de la Libertad y pagarés del Tesoro de Estados Unidos, por valor de $218,058.75; y cuentas por cobrar, y créditos personales, por $231,726.92; haciendo un total, entre las propiedades real y personal, de $712,894.97. El Tesorero de Puerto Rico hizo la valoración de la propiedad en $937,630, a los efectos de la tributación, y la notificó a la corporación citada. Al hacerse por el Tesorero la tasación, no se concedió exención alguna por los siguientes conceptos:

(a) Bonos de la Libertad y obligaciones del Tesoro de Estados Unidos, por valor de $218,058.75.

(b) Gastos de dragado, relleno y construcción de malecón en terrenos arrendados a El Pueblo de Puerto Rico, por un valor de $67,098.58.

(c) Cuentas a cobrar y créditos personales, por $231,726.92.

La Porto Rico Coal Co. acudió ante la Junta de Revisión e Igualamiento, que denegó la petición y dejó subsistente la tasación hecha por el Tesorero; y éste impuso a la referida compañía, como contribución para 1924-1925, la suma de $19,596.48; la ahora apelante pagó la suma, y de ella

$6,408.20 sin protesta y $13,188.28 bajo protesta, sosteniendo que sólo se halla sujeta a tributación en 1924-1925 por un capital de $306,611.93. Y sobre esas bases presentó su demanda, a la que contestó el Tesorero sosteniendo la tasación como ajustada a la ley. Y la corte, una vez celebrado el juicio y oída la prueba y los argumentos, dictó sentencia declarando con lugar la demanda en cuanto a la suma de $5,959.76, y ordenando su devolución, con intereses. En la opinión que se une a la sentencia se establece la exención de la suma de $218,058.75, valor de los bonos de la Libertad y obligaciones del Tesoro de Estados Unidos, y $67,098.58 de mejoras de los terrenos arrendados a El Pueblo de Puerto Rico.

Contra esa sentencia, de fecha 6 de septiembre de 1927, se ha interpuesto apelación en nombre de la demandante Porto Rico Coal Co.

La apelante alega la comisión de cuatro errores. De ellos, los dos primeros están señalados así:

"1. La Corte de Distrito erró al no sostener que la tasación hecha por el Tesorero de Puerto Rico sobre la base de $937,630.00 como total del capital en acciones y sobrante de la demandante, es arbitraria e ilegal.

"2. La Corte de Distrito erró al sostener que no se demostró por preponderancia de prueba que la verdadera tasación de las propiedades de la demandante fuera la sometida por ésta en su planilla."

Se discuten como uno solo, porque en realidad, son una y la misma materia, vista en dos distintas formas.

El Tesorero tomó como base para la tasación el capital (acciones, bonos, sobrante, etc.). Las acciones fueron puestas en un valor de $500,000, y el resto en uno de $437,630.

La apelante sostiene que por "sobrante" se ha de entender "un fondo de reserva, que gradualmente acumulan las corporaciones para hacer frente a cualquier eventualidad imprevista." Observa el apelado que esa teoría no está sostenida por la ley, ni por la jurisprudencia. Y está en lo cierto el apelado. Ni en la ley, ni en la jurisprudencia, ni

en principio alguno de justicia, se encuentra apoyo para esa teoría. Más de lógica y de ley es la de la corte en su opinión, cuidadosamente estudiada y expuesta; y que da ese nombre a los bienes en exceso del valor a la par de las acciones. A esta calificación debe darse toda aprobación y fuerza.

▪▪ No podemos concurrir con la apelante en la eficacia extrema que quiere dar a la declaración del contribuyente, de forma que, según parece, ella fuerza al Tesorero a estar y pasar por lo declarado, o a presentar una prueba minuciosa y fuerte de que la tasación hecha por el contribuyente no es legal o justa. Es verdad que en justicia no puede darse amparo a una tasación arbitraria y caprichosa del Tesorero; pero la misma regla es de aplicación a la que, con los mismos defectos, haga el contribuyente. De hecho, hay en este último una tendencia defensiva que puede llevarle a error en la apreciación de valores, sin que ello signifique que intente defraudar al Tesoro; pero sí que cree que sus valores han decrecido, y así proceda en consonancia con tal creencia.

El Tesorero no estaba obligado a aceptar como indudable la cantidad de $754,921.51 que aparece de la declaración de la demandante apelante. El tasador, basándose en otros datos, y aun en su propio conocimiento, puede fijar otra suma. Lo hizo en este caso, y dada intervención a la Junta de Revisión e Igualamiento, ante la que se podía producir prueba, la junta confirmó la resolución del Tesorero. Nos parece que si la demandante creyó que el Tesorero se había equivocado, la prueba de ese error incumbe a la demandante.

El caso *Gibson* v. *Clark*, 131 Iowa 325, 108, N.W. 527, que se cita por la apelante, fué uno en que se trató de una supuesta omisión de propiedad de W. F. Clark, y no de una diferencia en el valor o tasación de bienes. De todas formas, en la decisión no se va tan lejos como parece presumir la apelante. Si se fuera, no nos sentiríamos obligados a seguirla, a menos que el razonamiento fuera muy convincente. Claro es que la mera suposición, o conjetura, de que

se ha omitido propiedad, no es suficiente para destruir ciertas presunciones; pero esto no es lo que la apelante sostiene; la apelante va mucho más lejos.

De la jurisprudencia citada por el apelado aparece más clara la teoría de que, sin quitarle su valor a la declaración del contribuyente, no se le puede dar el de obligar al tasador en forma que él no pueda, por otros motivos, enmendar la tasación. Otra cosa sería algo como se dijo en el caso *Bowman* v. *Montcalm,* 89 N.W. 334:

"Si la declaración contiene valoraciones de las propiedades mencionadas en ella, tales valoraciones no son obligatorias y concluyentes para el tasador. Si lo fueran, el contribuyente, y no el tasador, sería el que prácticamente estaría haciendo la tasación de la propiedad."

En cambio, encontramos bien fundada una teoría contraria a la de la apelante. En el caso *Great Northern Railway Co.* v. *Okanogan County,* 223 Fed. Rep. 198, se dijo:

"En una acción para recobrar contribuciones pagadas bajo protesta por el fundamento de que la tasación era excesiva, el peso de la prueba recae sobre el demandante para demostrar que tales contribuciones eran opresivas e ilegales; y cuando la evidencia es incierta y no concluyente, y no satisface a la corte con respecto al verdadero valor de la propiedad, o que la tasación, tal como se hizo era tan excesiva que hiciera surgir la inferencia de fraude o mala fe, el demandante no puede recobrar."

Y en el caso *Washington Union Coal Co.* v. *Thurston County,* 2 Am. Law Rep. 1546, se lee:

"En lo que respecta a lo razonable de la valoración dada a la propiedad para fines contributivos, la regla perfectamente establecida favorece al tasador y a la Junta de Revisión e Igualamiento, y cualquiera que pretenda impugnar tal valoración, emprende una tarea que no puede llevar a cabo sino con prueba clara y convincente. . .

"En el presente caso encontramos, además de la presunción que existe a favor del tasador, investigaciones practicadas por él, y su conocimiento personal, unido todo ello a la debida consideración dada al asunto por la Junta de Revisión e Igualamiento, circunstancias que sostienen la valoración y las contribuciones de que se queja el demandante. Para destruir la presunción de razonable que tiene la

tasación, la apelante presentó la declaración de su superintendente. . . y la de su ingeniero. . . Tal prueba no es suficiente para destruir la presunción en favor de la tasación sobre la cual descansan las contribuciones que se tratan de evadir.''

Notamos que en ciertos casos se ha dado gran importancia a la decisión de las juntas de revisión e igualamiento, a las que se concede en el caso *Kimball* v. *School District*, 63 Pac. 213, una capacidad casi judicial al llevar a cabo las tasaciones; y en alguna decisión se ha dicho que las cortes no pueden convertirse en tasadores para los efectos de contribución, y sí solamente deben intervenir en casos en que se presente prueba concluyente de fraude.

No dió la corte de distrito, en el caso presente, a la prueba de la demandante, el valor que ésta creyó tenía. Y procedió la corte con acierto, ya que esa prueba no es convincente acerca de la verdadera valoración.

En nuestra jurisdicción tenemos un caso parecido al presente: el de *Saurí y Subirá* v. *Tesorero*, 26 D.P.R. 609. Saurí y Subirá eran dueños de maquinaria para elaboración de azúcar, y edificios en que aquélla se hallaba montada; para los fines de la contribución de 1915–1916, Saurí y Subirá tasaron aquellos bienes en $32,470; el Tesorero hizo la tasación de los mismos en $153,280; Saurí y Subirá acudió ante la Junta de Revisión, que confirmó la tasación del Tesorero; y luego, pagó bajo protesta, y presentó su demanda, que en definitiva fué declarada sin lugar. En el caso ante la corte de distrito hubo prueba de ambas partes. En la decisión este Tribunal Supremo citó el caso *The Ensenada Estate, Inc.* v. *Hill*, 24 D.P.R. 520, y declaró que la apelante Saurí y Subirá no había demostrado ante la corte ''que la contribución pagada bajo protesta sea tan claramente excesiva que les haya producido una verdadera e inequívoca opresión que equivalga a una injusticia clara y sustancial de que deban obtener reparación mediante la acción ejercitada ante dicha corte.''

En el caso presente no encontró la corte de distrito los

elementos de prueba, y de convicción para el juzgador, para decidir de acuerdo con la demandante. Y la corte decidió prudente y rectamente.

En cuanto a los otros señalamientos de error, el tercero es como sigue:

"La Corte de Distrito erró al no declarar exenta de contribución la partida de cuentas a cobrar y otros créditos personales de la demandante."

Toda propiedad que no se halle expresamente exenta del pago de contribuciones debe ser tasada como imponible, de acuerdo con el artículo 290 del Código Político. Las exenciones se detallan en el artículo 291 del mismo cuerpo legal.

Se citan por las partes distintos casos resueltos por este tribunal.

En el caso *Union Central Life Insurance Co.* v. *Gromer*, 19 D.P.R. 900, el punto principal en discusión, y en resolución, fué el situs de la deuda, y la autoridad o jurisdicción para tasar y para imponer contribución sobre ciertos créditos, aun garantizados con hipoteca sobre bienes en Puerto Rico, pero pertenecientes a una corporación con domicilio en Ohio. Pero es cierto que se dijo en aquel caso:

"No solamente tal intención deja de aparecer en ninguna legislatura de El Pueblo de Puerto Rico, sino que en el artículo 290 del Código Político tal como ha quedado enmendado, quedan específicamente exceptuados los créditos personales. El Hon. Foster V. Brown, Fiscal General de Puerto Rico, dice:

" 'Al quedar enmendada por la Legislatura de 1904, dicha sección, disponiendo que los bienes muebles no comprenderán cuentas corrientes, pagarés, ni ningún otros créditos personales, fué la intención de la Legislatura eximir esta clase de bienes del pago de contribuciones, pues de otro modo la enmienda del artículo no hubiera tenido objeto alguno.' 3 Opiniones del Attorney General de Puerto Rico, pág. 332.

"Constituyendo los créditos personales en poder de la Compañía de Seguros el capital sobre el cual se trató de imponer la contribución en este caso, no ha quedado sujeto al pago de la contribución por la Legislatura de Puerto Rico, y el hecho de que se encuentra asegurado por hipoteca según hemos visto, no establece diferencia alguna, no habiendo mostrado la legislatura intención alguna de impo-

nerle una contribución como tal. El caso podría resolverse por virtud de estas consideraciones, pero con el fin de aclarar más nuestro criterio en cuanto a la cuestión, pasaremos a discutir el asunto con más amplitud.''

En el caso *Fajardo Sugar Co.* v. *Tesorero de Puerto Rico,* 22 D.P.R. 311, ha dicho este tribunal lo que sigue:

''A pesar del caso de Union Central Life Insurance Co. v. Gromer, arriba citado, el apelante insiste en que los créditos no están exentos por la ley. Alega que el Fiscal General de Puerto Rico, Sr. Brown, como también este Tribunal al adoptar su opinión, estuvieron equivocados. El argumento es que el artículo 290 meramente expresa que los créditos estarán exentos de ser clasificados bajo el título de bienes muebles, pero que pueden, sin embargo, ser tasados los créditos, puesto que el artículo 290 dispone que sea tasada toda la propiedad. El apelante llama la atención hacia el hecho de que en la ley de 1902 también se disponía que serían tasados los créditos y que la única revisión hecha en la ley de 1904 fué para excluirlos de su clasificación como bienes muebles.

''Es muy general y conveniente la división de la propiedad en inmueble y mueble. A veces los créditos o derechos de acción no eran considerados como comprendidos en la propiedad mueble y la ejecución o procedimiento judicial seguido contra la propiedad mueble no comprendía a los créditos. El mero hecho de que la legislatura indique la intención de tasar toda la propiedad no hace que toda forma o mutación de propiedad esté sujeta a tasación y con frecuencia no se consideran como propiedad algunas cosas o derechos que representan valor hasta que no sean declarados así por la Legislatura. Talley, County Treasurer, v. Brown, 125, N.W. 248; State of Washington ex rel J. G. Wolfe v. Parmenter, 19 L.R.A. (N.S.) 707, donde se cita el caso de People v. Ribernia Sav. & L. Sec., 51 Cal. 243, en el que se resolvió que los créditos no eran necesariamente propiedad de acuerdo con el precepto constitucional que exige que sea tasada toda la propiedad. Véase también el caso de Cleason v. Thaw, sentencia del Tribunal Supremo de los Estados Unidos de fecha febrero 23, 1915. Sin embargo, generalmente la propiedad mueble comprende los créditos, y así ha sido declarado por las cortes; y al excluir específicamente el artículo 290 a dichos créditos debemos tener por cierto que la intención de la Legislatura fué la expresada por ella. La Legislatura teniendo presente que toda la propiedad material es tasada puede que haya querido evitar una tasación sobre los derechos a la propiedad con el fin de impedir la doble tasación que tan frecuente-

mente recae sobre el mismo comodatario en vez de sobre la persona que tiene el crédito. El caso de la Union Central Life Insurance Company v. Gromer, jamás ha sido revocado y no se funda únicamente en la opinión. del Fiscal General, sino en una consideración detenida del estatuto. Siguiendo estos mismos razonamientos el apelante insiste en el hecho de que las exenciones deben ser interpretadas estrictamente si bien los casos en que se establece este principio son más generalmente casos de privilegios, como por ejemplo, de ciertos individuos, corporaciones, juntas o instituciones de caridad, o propiedad de personas que ha quedado exceptuada. Wicksbury, etc., R. R. Co. v. Dennis, 116 U. S. 665; Providence Bank v. Billings, 4 Pet. 514; 37 Cyc 908 et seq.''

Y en la misma opinión:

''Pero ya se considere la exclusión de los créditos contenida en el artículo 290 como una exención o excepción a la tasación, la intención de la Legislatura, según aparece de dicho artículo, no da lugar a equivocación alguna. La intención de hacer dicha exclusión se manifiesta además en los cambios hechos en el año 1904 en otras partes del Código Político. En los artículos 317 y 319 del referido código que exigen que las corporaciones deberán presentar una relación de sus bienes muebles fué incluida la palabra 'credits' en 1902 y omitida en 1904, fecha en que fué enmendado dicho artículo 290. Y el mismo artículo 290 expresa que para los fines de la tasación la propiedad inmueble comprenderá ciertas cosas y la mueble otras (excluyendo los créditos) indicando así una completa división de la propiedad que ha de ser tasada.''

En el caso *Porto Rican and American Insurance Co. v. Gallardo,* 37 D.P.R. 114, en reconsideración se estableció lo que sigue:

''Convenimos con el gobierno en que no se demostró que los $11,850 en acciones de corporaciones estuvieran exentos de contribución. El artículo 291 (d) del Código Político exime de contribución las acciones del capital de otras corporaciones cuando la propiedad de tales corporaciones esté exenta o cuando dichas corporaciones estén sujetas al pago de contribuciones por tales acciones. La apelante no demostró entonces que sus acciones estuviesen exentas de contribución en una u otra forma.

''Igualmente respecto a créditos hipotecarios el artículo 291 (m) dice lo siguiente:

'' 'Los bonos hipotecarios que no devenguen interés, y otras obli-

gaciones usadas exclusivamente como fianzas o garantías del fiel desempeño de cargos oficiales; así como gravámenes y censos que no devenguen más del cinco por ciento de interés anual, siempre que expresamente se dediquen al cumplimiento de voluntad testamentaria, por la cual se destinen a fines de beneficencia o educación. Mas toda propiedad por el presente título exenta de contribución, en tanto cuanto tenga la propiedad inmueble, se inscribirá, valuará y describirá como es debido y como se hace con cualquiera otra propiedad; y el Tesorero llevará un registro que manifieste, respecto de cada finca exenta por la razón expuesta, la descripción de la misma, el valor que se le calcula, y quién la posee, así como la razón por la cual está exenta de contribución, y los demás informes que sean de desearse, a juicio del Tesorero.'

''La demandante no nos convence de que cae bajo ninguna de estas clases. De suerte que los $16,000 de créditos hipotecarios no están exentos.''

La demandante y apelante sostiene que, según la prueba, entre los créditos que dan la partida de $231,726.92 estaban incluidos certificados de Central Carmen y Central Coloso, y que aparece de la declaración de su testigo Sr. Beck que ellos fueron tomados para cubrir ciertos créditos contra esas corporaciones, y por eso deben considerarse como créditos a cobrar. La teoría es errónea, ya que esos certificados no pueden nunca tomarse como un crédito por la razón que se indica, sino como una verdadera propiedad.

Pero, de todas formas, la prueba de la demandante no convenció a la corte de distrito de que las acciones o certificados, estuvieran exentas de la contribución, ni de que los demás créditos lo estuvieran. Y después de examinar la prueba, no nos sentiríamos justificados para revocar la conclusión a que llegó la corte sentenciadora.

Como cuarto error se ha señalado el no haberse impuesto las costas a la parte demandada.

No hay méritos para declarar temeraria la defensa del demandado; y la discreción de la corte ha sido prudentemente ejercida en este caso.

*Por las razones expresadas debe confirmarse la sentencia apelada.*