GUILLERMO CORTADA, SR., ANTONIO QUILINCHINI LUIGGI, FERNANDO L. TORO, SUCN. J. SERRALLÉS, CRÉDITO Y AHORRO PONCEÑO y BANCO DE PONCE, peticionarios y apelados, *v.* EL MUNICIPIO DE PONCE y LA ASAMBLEA MUNICIPAL DE PONCE, constituída por su Presidente G. S. PIERLUISSI, ETC., querellados y apelantes.

No. 6473.—*Sometido:* Enero 17, 1934. *Resuelto:* Septiembre 29, 1934.

*R. Rivera Zayas, Guillermo Pierluissi,* y *R. Atiles Moréu,* abogados de los apelantes; *José A. Poventud* y *Alberto S. Poventud,* abogados de los Sres. Cortada y Quilinchini; *F. Parra Capó,* abogado de la Sucn. Serrallés y el Sr. Toro; *Miguel Marcos Morales,* abogado del Crédito y Ahorro Ponceño y *López de Tord & Zayas Pizarro,* abogados del Banco de Ponce, apelados.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

La Asamblea Municipal de Ponce adoptó una ordenanza No. 22, serie de 1933, que fué publicada en el periódico "El Día", en mayo 13 de 1933, con el fin de enjugar un déficit en los ingresos ordinarios del presupuesto municipal. Ejercitando el recurso especial establecido en la sección 83 de la Ley Municipal de 1928, los peticionarios acudieron a la Corte de Distrito de Ponce en solicitud de un auto de *certiorari* para obtener la revisión y nulidad de la citada ordenanza, por entender que la misma lesiona sus derechos e infringe la Constitución federal, la Ley Orgánica de Puerto Rico y las leyes insulares. Librado el auto por la Corte de Distrito, los querellados solicitaron su nulidad y presentaron copia de una ordenanza No. 25, serie de 1933, aprobada por la Asamblea Municipal de Ponce en 6 de junio del año referido. Esta ordenanza enmienda los artículos 1, 2, 7, 9 y 10 de la orde-

nanza original No. 22. La corte inferior, luego de discutidas ampliamente las cuestiones planteadas, declaró nulas las ordenanzas No. 22 y No. 25, serie de 1933, aprobadas por la Asamblea Municipal de Ponce en abril 28 y junio 6 de 1933. La ordenanza enmendada impone "una contribución equivalente al 1 por ciento anual sobre todo el capital representado por préstamos, pagarés y otros documentos negociables o créditos de clase alguna, garantizados con hipoteca u otra garantía real o personal, o no garantizados, siempre que el mismo no esté exento por la ley, o gravado por arbitrio, contribución o impuesto federal o insular, cuyo capital así representado o evidenciado esté en posesión legal o pertenezca en propiedad o usufructo a cualquier persona natural o jurídica domiciliada dentro de la jurisdicción del límite territorial del municipio de Ponce, o que tenga allí establecida alguna oficina para hacer negocios."

Se atribuyen a la corte inferior tres errores. En el primero se alega que las peticiones de *certiorari* no fueron juradas por los querellantes todos, a los cuales representaban distintos abogados.

No aparece suscitada ante la corte inferior cuestión alguna relacionada con el juramento que fué prestado por dos de los peticionarios en la solicitud original y por uno de ellos en la solicitud complementaria. Es ésta una cuestión que se suscita demasiado tarde para que pueda ser considerada por este tribunal. Sin embargo, deseamos hacer constar que a nuestro juicio no es necesario que todas las partes interesadas en la expedición del auto de *certiorari* juren separadamente los hechos alegados en la misma. Como muy bien dicen los peticionarios, la ley no requiere cosas inútiles. Para cumplir con el propósito que persigue la ley basta que prima facie se establezca la certeza de los hechos alegados por medio de un juramento, sin que deba exigirse que todos y cada uno de los peticionarios juren separadamente las mismas alegaciones, incurriendo en una innecesaria repetición. Debe desestimarse el alegado error.

■ Se alega que la petición de *certiorari* no aduce hechos determinantes de una causa de acción, y que la corte cometió error al declararla con lugar y al decretar la nulidad de ambas ordenanzas municipales.

De acuerdo con la prueba aportada los peticionarios son dueños y poseedores de pagarés, créditos hipotecarios, documentos negociables, y otros créditos adicionales sujetos al impuesto que se establece por las ordenanzas municipales. Como hemos visto estas ordenanzas imponen una contribución a todo capital representado por préstamos, deudas o créditos garantizados con hipotecas u otra garantía real o personal, o no garantizados. Así lo dispone el artículo primero de la ordenanza tal y como quedó enmendada. Por la sección segunda de la referida ordenanza se impone la contribución a toda persona natural o jurídica domiciliada en el municipio de Ponce o que tenga en dicha ciudad oficina establecida para hacer negocios, que sea dueña o estuviere en posesión legalmente de cualquier capital representado por pagarés u otros documentos negociables, créditos de clase alguna o préstamos, garantizados o no con hipoteca, o cualquier otra garantía real o personal, no exento de contribución, o gravado por cualquiera contribución, impuesto o arbitrio insular o federal.

Varias son las razones que aducen los peticionarios para demostrar la nulidad de la ordenanza municipal aprobada por el municipio de Ponce; pero la razón fundamental que sirve de base a esta alegación es que de acuerdo con el artículo 290 del Código Político y la jurisprudencia hasta hoy establecida, las cuentas, pagarés y créditos, con o sin garantías, están absolutamente exentos del pago de toda tributación y que con arreglo al artículo 46, letra *b*, de la Ley Municipal de 1928, ningún municipio puede fijar impuesto alguno sobre bienes que estén exentos de contribución. Tanto los peticionarios como los demandados han escrito extensos e interesantes alegatos sosteniendo sus respectivos puntos de vista. Nos limitaremos a discutir en esta opinión la cuestión fundamental

y básica planteada por los peticionarios, porque, bastando por sí sola para resolver esta apelación, no debemos entrar a estudiar y considerar los demás puntos suscitados y argumentados por los distinguidos abogados que representan a querellantes y querellados. La corte inferior ha escrito una cuidadosa opinión que reproducimos en parte, porque contiene una historia de nuestra legislación con respecto a la cuestión planteada, y porque constituye, a nuestro juicio, una correcta interpretación de la ley sobre el particular.

"Aplicando estas disposiciones de la Ley Municipal, pasemos a determinar la cuestión principal envuelta en este procedimiento, es decir, si los créditos personales de todas clases, garantizados con hipotecas o no garantizados, están exentos de contribución en Puerto Rico como sostienen los peticionarios o si meramente están exentos de tasación para fines insulares en cuanto a contribución sobre la propiedad y sujetas a tributación por los municipios bajo el art. 46 (f) supra, según sostienen los querellados. Hemos estudiado cuidadosamente esta interesante cuestión según la han tratado extensamente las partes en sus alegatos, y consideramos que en el de los peticionarios se analiza y compara la jurisprudencia de nuestro Tribunal Supremo y la de la Corte de Circuito de Boston, interpretando el art. 290 del Código Político en relación con los arts. 291, 317 y 319 del mismo cuerpo legal en una forma tan clara, precisa y convincente que de su alegato nos permitimos citar, haciéndolos nuestros, con ligeras variaciones, algunos párrafos.

"El Código Político de 1902 expresamente incluía, como propiedad sujeta a tributación, 'los créditos y las deudas.' El artículo 290 de dicho cuerpo legal, en lo pertinente, decía:

'Lo que se entiende por bienes muebles comprenderá . . . . . los créditos . . . . . las deudas.'

"El art. 291 del mismo Código, letra c, eximía de contribuciones a 'las deudas de cualquier persona . . . . sujetas al pago de contribución, con las limitaciones y en la forma prescrita en los arts. 297 y 298.'

"Por el artículo 297 del expresado Código Político, al declararse la propiedad para fines contributivos, se autorizaba para deducir de los créditos declarados, los pagarés y otras deudas *bona fide,* sin que éstas pudiesen exceder del importe de aquéllos, excepto en el caso de hipotecas; y si no se declaraba crédito alguno, tampoco procedía deducción por concepto de las deudas.

"El artículo 298 del citado Código Político de 1902, consideraba toda hipoteca 'como una participación en la propiedad que afectaba,' tasándose la propiedad gravada previa deducción del valor de la hipoteca o garantía.

"El acreedor hipotecario, según el precepto de ese artículo, no pagaba contribución sobre ninguna deuda así garantizada si por cláusula inequívoca en el convenio debía satisfacerse el tributo por el deudor, a quien entonces incumbía el pago. Véase: Código Político de 1902, arts. 290, 291 (c), 297 y 298.

"Por enmienda de marzo 10, 1904, p. 169, el susodicho artículo 290 del Código Político, declarativo de la propiedad sujeta a contribución, quedó modificado mediante esta adición:

'. . . . . pero no comprenderá los créditos en cuentas corrientes, pagarés, ni otros crédios personales.' Comp. 1911, p. 381.

"Así quedó definida la propiedad personal sujeta a tributación, es decir, excluyéndose las cuentas corrientes, pagarés y otros créditos personales.

"Es de verse, por tanto, que hasta el año 1904 se consideró como propiedad mueble sujeta a tasación para fines contributivos, toda clase de créditos personales, y que desde esta fecha, 1904, estos créditos fueron eliminados, quedando exentos de toda contribución.

"Los créditos hipotecarios, que también se tasaban a nombre de sus dueños hasta el año 1904, según los artículos 297 y 298 del Código Político de 1902, y se deducían del valor de la propiedad afectada del deudor, se eliminaron asimismo de las referidas disposiciones legales en armonía con la nueva definición de 'bienes muebles.'

"Los créditos de todas clases, incluyendo desde luego los garantizados hipotecariamente, han quedado exentos desde 1904 sin condición alguna.

"También, el artículo 291 (m) por modo expreso eximió de contribuciones a cierta clase de bonos por haber quedado incluídos en la definición de 'bienes muebles', comprendida en el art. 290 del Código Político según fuera enmendado en marzo 10, 1904, p. 169.

"Asimismo, en lo relativo a corporaciones, el artículo 317 del mencionado Código Político de 1902, incluía 'en los bienes muebles, todos los créditos', y por la enmienda de 1904, p. 176, se excluyó lo concerniente a créditos de corporaciones como parte de su propiedad personal. (Comp. 1911, p. 559.)

"El caso en que primeramente fué considerada tal cuestión es el de Union Central Life Insurance Co. v. Gromer, Tesorero de

Puerto Rico, 19 D.P.R. 900, donde se resolvió por modo claro y terminante que:

" 'De acuerdo con la ley vigente en Puerto Rico el dueño de una finca hipotecada paga contribución por el valor total de la propiedad sin deducir el importe de la hipoteca y ésta, para los fines de contribución, es lo mismo que si fuera bien mueble. De acuerdo con la sección 290 enmendada del Código Político los créditos personales están expresamente exentos de contribución. . . . . La sección 320 del Código Político en relación con la 290 del mismo código sería anticonstitucional si se interpretara en el sentido de que los créditos hipotecarios poseídos por una corporación extranjera domiciliada fuera de Puerto Rico están sujetos al pago de contribución, mientras que los mismos créditos, si pertenecen a un individuo, no lo están . . . . . Habiendo la corporación demandante pagado bajo protesta las contribuciones impuestas por el Tesorero sobre los créditos hipotecarios poseídos en esta Isla, procede su devolución a dicha corporación . . . . . No puede negarse que de acuerdo con el artículo 290 del Código Político, los créditos en poder de individuos particulares están exentos del pago de contribuciones . . . . . ' Union etc. Co. v. Tesorero, 19 D.P.R. 900, 901, 912, 919.

"Al caso citado le siguió el de Fajardo Sugar Co. v. Richardson, Tesorero de Puerto Rico, 22 D.P.R. 311, 312, donde, después de ratificarse la doctrina sentada en Union Central Life Insurance Co. v. Gromer, Tesorero, se declaró:

" 'A pesar del caso de Union Central Life Insurance Co. v. Gromer, arriba citado, el apelante insiste en que los créditos no están exentos por la ley. Alega que el Fiscal General de Puerto Rico, Sr. Brown, como también este tribunal al adoptar su opinión, estuvieron equivocados. El argumento es que el artículo 290 meramente expresa que los créditos estarán exentos de ser clasificados bajo el título de bienes muebles, pero que pueden, sin embargo, ser tasados los créditos, puesto que el artículo 290 dispone que sea tasada toda la propiedad. El apelante llama la atención hacia el hecho de que en la ley de 1902 también se disponía que serían tasados los créditos y que la única revisión hecha en la ley de 1904 fué para excluirlos de su clasificación como bienes muebles. Sin embargo, generalmente la propiedad mueble comprende los créditos, y así ha sido declarado por las cortes; y al excluir específicamente el artículo 290 a dichos créditos debemos tener por cierto que la intención de la Legislatura fué la expresada por ella. La legislatura teniendo presente que toda la propiedad material es tasada

puede que haya querido evitar una tasación sobre los derechos a la propiedad con el fin de impedir la doble tasación que tan frecuentemente recae sobre el mismo comodatario en vez de sobre la persona que tiene el crédito. El caso de Union Central Life Insurance Company v. Gromer, jamás ha sido revocado y no se funda únicamente en la opinión del Fiscal General, sino en una consideración detenida del estatuto. Pero ya que se considera la exclusión de los créditos contenida en el artículo 290 como una exención o excepción a la tasación, la intención de la Legislatura, según aparece de dicho artículo, no da lugar a equivocación alguna. La intención de hacer dicha exclusión se manifiesta además en los cambios hechos en el año 1904 y en otras partes del Código Político. En los artículos 317 y 319 del referido código que exigen que las corporaciones deberán presentar una relación de sus bienes muebles fué incluída la palabra "créditos" en 1902 y omitida en 1904, fecha en que fué enmendado dicho artículo 290. Y el mismo artículo 290 expresa que para los fines de la tasación la propiedad inmueble comprenderá ciertas cosas y la mueble otra (excluyendo los créditos) indicando así una completa división de la propiedad que ha de ser tasada.'

"Este caso fué confirmado en apelación y aprobado por la Corte de Circuito de Apelaciones en Fajardo Sugar Co. v. Tesorero, 237 Fed. 195, 196.

"En el caso de Porto Rican & American Ins. Co. v. Gallardo, Tesorero de Puerto Rico, 35 D.P.R. 917, 919, 921, se resolvió que 'fué la intención de la legislatura imponer contribuciones sobre propiedad tangible o sobre la propiedad inmueble que la representara . . . . . una contribución sobre el capital de la corporación según estaba representado por sus bienes'. En este mismo caso se reiteró la doctrina de que, no ya tratándose de personas naturales, sino que aún cuando se imponga la contribución sobre una corporación directamente, la propiedad exenta debe ser deducida de la tasación; y, al efecto, se excluyeron de la tasación los créditos hipotecarios, pagarés y otros créditos, estimándose que 'solo podía imponerse contribución sobre el efectivo en caja.'

"Posteriormente, reconsiderando el caso de Porto Rican & American Ins. Co. v. Gallardo, supra, el Hon. Tribunal Supremo intentó variar la jurisprudencia tan firmemente establecida en cuanto a la exclusión de créditos del pago de contribuciones, declarando que:

" 'En ausencia de demostración al efecto de que unos créditos hipotecarios caen bajo alguna de las clases a que se refiere el artículo 291 (m) del Código Político, el importe de los mismos no está

exento del pago de contribución.' P.R. & Am. Ins. Co. v. Gallardo, 37 D.P.R. 114.

"Y se rehusó eliminar de la tasación ciertos créditos hipotecarios pertenecientes a una corporación.

"Este último caso fué seguido en The Porto Rico Coal Co. v. Juan G. Gallardo, Tesorero de Puerto Rico (1929), 39 D.P.R. 637, en el cual se negó la corte a excluir ciertas 'cuentas a cobrar y créditos personales' de una corporación, y, después de mencionarse los casos de Ins. Co. v. Gromer, 19 D.P.R. 900 y Fajardo Sugar Co. v. Tesorero, 22 D.P.R. 311, adoptose el de P. R. & Am. Ins. Co. v. Gallardo, 37 D.P.R. 114, declarándose que:

" 'Acciones o certificados de corporaciones tomados para cubrir créditos contra ellas no pueden considerarse como créditos a cobrar; y en ausencia de prueba de que ellos, junto con otros créditos, estén exentos de contribución, los mismos están sujetos al pago de contribución.'

"Este litigio fué el que dió motivo a la intervención de la Corte Federal de Apelaciones del Primer Circuito que, en alzada, estableció definitivamente la doctrina hoy imperante en esta isla, la cual exime de contribución sobre la propiedad a los créditos de todas clases y ratifica la jurisprudencia sentada en Union Central Life Ins. Co. v. Gromer, 19 D.P.R. 900 y Fajardo Sugar Co. v. Richardson, 22 D.P.R. 312, ya que, al revocarse la sentencia de nuestro Tribunal Supremo en Porto Rico Coal Co. v. Gallardo, supra, se resolvió:

" '. . . . La Corte de Distrito . . . . . se negó a excluir los créditos. El artículo 290 del Código dispone que los créditos en cuentas corrientes, pagarés y otros créditos personales no serán bienes muebles. Las cortes locales, en los casos de Union Central Life Insurance C. v. Gromer, 19 D.P.R. 900, 910–911, y en Fajardo Sugar Co. v. Richardson. Tesorero, 22 D.P.R. 311, 319–321, propiamente, a nuestro juicio, han resuelto que los créditos y cuentas a cobrar no están sujetos a tributación y no deben ser incluídos en la valoración de las corporaciones para fines contributivos hecha de conformidad con el artículo 317. Este último caso fué apelado para ante esta Corte, y en 327 Fed. 195, 196, dijimos: ''Tanto la Corte de Distrito como la Corte Suprema de Puerto Rico en apelación prestaron debida consideración a las cuestiones de derecho y llegaron a la conclusión de que al interpretarse debidadamente las disposiciones del código, las partidas o 'créditos' en disputa no estaban sujetos a tributación. No hallamos razón alguna para no convenir con el criterio de las cortes locales respecto

a la ley local y no tenemos duda de que la interpretación dada a las disposiciones del código es correcta.'' Esta corte siempre dará debida consideración a la interpretación dada a un estatuto local por una corte local de última instancia, mas cuando, como ocurre en este caso, ya ha aprobado una interpretación dada al artículo 317 por la Corte Suprema de Puerto Rico, no puede, si las decisiones de una corte de apelaciones sirven para algún fin, seguir toda nueva interpretación dada a este artículo por las cortes en Puerto Rico. Aquí no se aduce razón alguna para revocar nuestra decisión anterior . . . . . Las cortes locales parecería haberse desviado de la interpretación anterior dada por ellas a este artículo en el caso de France & New York Medicine Co. v. Reily, 31 D.P.R. 650, y haber tratado la contribución fijada por el artículo 317 como una especie de arbitrio, pero creemos que ésta no fué una interpretación correcta del artículo y no ha sido en el ínterin seguida por las cortes locales. En realidad, esta interpretación fué revisada por la Corte Suprema local en el caso de P. R. & Am. Ins. Co. v. Gallardo, Tesorero. Ni este último caso ni el de Porto Rican & American Insurance Co. v. Gallardo, 37 D.P.R. 114, citado en el alegato del gobierno, son inconsistentes con el criterio expresado por la Corte Suprema en 19 D.P.R. 900, y 22 D.P.R. 311. Si el estatuto, tal y como ha sido interpretado por la Corte Suprema de Puerto Rico en los últimos casos citados, con la aprobación de esta corte, no es satisfactorio al Pueblo de Puerto Rico, éste tiene una Legislatura con autoridad para enmendarlo.' P. R. Coal Co. v. Domenech, 41 F. (2d) 183 et seq.

"Resuelto por la Corte de Boston el caso de Porto Rico Coal Co. v. Domenech, supra, surgió en la Suprema de Puerto Rico el de New Corsica Centrale v. Juan G. Gallardo, Tesorero, 41 D.P.R. 669, en el cual definitivamente se resolvió que:

" 'No puede haber duda de que este tribunal resolvió en Union Central Life Insurance Co. v. Gromer, 19 D.P.R. 900, y Fajardo Sugar Co. v. Tesorero, 22 D.P.R. 311, que, de conformidad con el estatuto, los créditos personales no estaban sujetos a tributación. El caso de Gromer resolvió que los créditos garantizados con hipotecas, eran no obstante primordial y fundamentalmente créditos, y que, por tanto, no podían formar parte de los bienes muebles, según se definen éstos en el artículo 290. El caso de Fajardo Sugar Co. resolvió esencialmente que los anticipos hechos a agricultores eran créditos, y que por consiguiente estaban expresamente excluídos de la definición de bienes dada en el artículo 290. Por tanto, nos sentimos obligados a resolver que el activo en el presente caso

constituía créditos, según la definición del artículo 290, y no podía considerarse como bienes más que los créditos en el caso de Gromer o en el de Fajardo Sugar Co. . . . . . Estamos bastante convencidos de que los casos anteriores habrían prevalecido de haberse fijado nuestra atención en el artículo 290 del Código Político. Debido a la forma en que se presentaron las cuestiones envueltas, el tribunal de momento no tuvo presente el artículo 290 y su interpretación anterior. . . . . La Corte de Circuito de Apelaciones de Boston revocó la decisión en Porto Rico Coal Co., supra, y necesariamente resolvió que los referidos certificados debían considerarse como créditos. Aquella corte, además, revisó nuestra jurisprudencia anterior en Union Central Life Ins. Co. v. Gromer, en **Fajardo Sugar Co. v. Tesorero, supra**, y la confirmación de la última de estas decisiones por la Corte de Circuito y resolvió, en efecto, que esas decisiones anteriores eran ya derecho establecido.'

''En virtud del anterior análisis de la jurisprudencia interpretando el artículo 290 del Código Político, somos de opinión que el capital representado por los créditos personales, garantizados o no, que se pretenden gravar por el Municipio de Ponce en la ordenanza así impugnada, están exentos de toda tasación y tributación por el gobierno insular, y siendo esto así, carece de poder la Asamblea Municipal de Ponce para imponerles dicha contribución de acuerdo con el art. 46, inciso *b*, de la Ley Municipal, supra, que expresamente dispone que los muncipios pueden imponer contribución sobre bienes muebles e inmuebles · dentro de su distrito municipal, siempre que dichos bienes no se hallaren exentos del pago de contribución por las leyes de los Estados Unidos, o por alguna ley de la Asamblea Legislativa de Puerto Rico. . . . .''

Aunque las razones y conclusiones del juez de la corte inferior, Sr. Todd, bastan para confirmar la sentencia apelada sin necesidad de nuevas citas y de más amplia argumentación, vamos a permitirnos, sin embargo, exponer algunas razones adicionales y explicar la significación y alcance que debe darse, a nuestro juicio, a cierta jurisprudencia citada por los abogados de los querellados.

De acuerdo con el inciso cuarto del artículo 26 de la Ley estableciendo un sistema de gobierno local para los municipios de Puerto Rico, aprobada en 1928 y enmendada en 1931, una de las atribuciones concedidas especialmente a la Asamblea

Municipal, con sujeción a las demás disposiciones de dicha ley, es la siguiente:

"4º. La imposición de contribuciones y arbitrios razonables dentro de los límites jurisdiccionales del municipio."

El artículo 46 de la referida ley enumera las fuentes de ingresos municipales y, en su inciso *b,* dice que estos ingresos consistirán "en el producto de cualquier contribución sobre bienes muebles e inmuebles del distrito municipal impuesta con la correspondiente autorización de la Asamblea Legislativa, siempre que dichos bienes no se hallaren exentos del pago de contribución por las leyes de los Estados Unidos o por alguna ley de la Asamblea Legislativa, vigente en Puerto Rico." Luego de especificar dicho artículo detalladamente en qué consistirán los ingresos, dice, en su inciso *f:*

"En cualquier otro impuesto, arbitrio o contribución que se decretare por la Asamblea Municipal en la forma dispuesta en el artículo 26, inciso cuarto, de esta ley, siempre que el objeto o materia de la contribución, arbitrio o impuesto, no haya sido objeto de algún impuesto, arbitrio o contribución federal o insular."

A nuestro juicio la ley es clara. El inciso *b* del artículo 46 de la Ley Municipal, al autorizar a los municipios para gravar mediante contribución bienes muebles o inmuebles, impone ciertas limitaciones y una de ellas es que esos bienes no se hallen exentos del pago de contribución por alguna ley vigente de la Asamblea Legislativa de Puerto Rico. Es así que de acuerdo con el artículo 290 del Código Político el capital representado por créditos personales, con garantías o sin ellas, no está sujeto a tributación; luego, la Asamblea Municipal de Ponce carece de autoridad para gravar una propiedad que una ley vigente de la Asamblea Legislativa ha declarado exenta de tributos.

La Asamblea Legislativa aprobó la ley municipal en 1928 y las enmiendas a la misma en 1931, con pleno conocimiento del alcance y significación del artículo 290 del Código Político y de su interpretación por este tribunal. No hay base en esta

ley para establecer la conclusión de que los aludidos preceptos del Código Político han sido tácitamente derogados. Por el contrario, se declara expresamente que no pueden gravarse por los municipios bienes que se hallaren exentos del pago de contribución por alguna ley de nuestra Asamblea Legislativa. Esta ordenanza de carácter local no puede derogar una ley de carácter general que ha fijado la política del estado por un período de tres décadas y ha puesto de manifiesto la intención de nuestra Legislatura, al declarar que los créditos personales no están sujetos a tributación. Si nuestras municipalidades tuviesen autoridad para imponer esta contribución, podría darse el caso de que los mismos bienes gravados en ciertos municipios estuviesen en otros libres de tributación, y no es de suponerse que fuese ésta la intención de la Asamblea Legislativa. La misma razón que tuvo la Legislatura para no considerar como bienes muebles sujetos a tributación los créditos en cuentas corrientes, pagarés y otros créditos personales, existe para que la municipalidad siga la misma línea de conducta al adoptar su legislación.

Los querellados citan a McQuillin como autoridad para sostener su alegación de que la municipalidad de Ponce tiene facultades para imponer la tributación impugnada. La cita de McQuillin, que transcribimos complementándola, del tomo 6, pág. 271 de su obra "Municipal Corporations", dice así:

"Tal poder para imponer contribuciones así delegado puede abarcar solamente una parte de los poderes poseídos por el estado, o puede limitarse en una forma cualquiera; pero el poder que se delega, si no está limitado, incluye toda la facultad poseída por el estado, de manera que la municipalidad puede gravar toda la propiedad dentro de su jurisdicción sin parar mientes en si ha sido gravada por el estado."

Este criterio está basado en el caso de *Woodall* v. *Lynchburg*, 100 Va. 318, 40 S.E. 915, que es el único caso citado por McQuillin en apoyo de la referida doctrina. Ni las palabras del autor ni las conclusiones de la Corte Suprema de Apelaciones de Virginia, sostienen la teoría de que la mu-

nicipalidad puede gravar una propiedad exenta de contribución por las leyes del estado.

Cooley expresa con mayor precisión y claridad el criterio de la Corte de Virginia. En el tomo 1, página 290 y 291 de su obra "Taxation", dice el referido autor:

"Facultades dadas en términos generales por la carta orgánica de un municipio 'to tax all property within the municipality', no autoriza una contribución sobre propiedad que está exenta por las leyes generales relativas a todas las contribuciones; . . . . . pero cuando la Legislatura confiere a una municipalidad el poder general de imponer contribuciones, le concede todos los poderes poseídos por ella con respecto a la imposición de estas contribuciones y la municipalidad puede gravar propiedad no gravada por el estado cuando no ha sido expresamente exenta de contribución."

En apoyo de este criterio cita Cooley el mismo caso de *Woodall* v. *Lynchburg,* supra, citado por McQuillin, y además el caso de *Newport News & O. P. Ry & Elec. Co.* v. *Newport News,* 100 Va. 157, 40 S.E. 645, resuelto también por la Corte Suprema de Apelaciones de Virginia. En este último caso se confirió a la municipalidad la facultad de levantar anualmente en propiedades dentro de sus límites, aquellos fondos que juzgase necesarios para sufragar sus gastos, en la forma en que fuese factible de conformidad con las leyes del estado y de los Estados Unidos. La ciudad de Newport impuso cierta contribución a los tranvías urbanos. No existía ninguna ley en el estado prohibiendo esta contribución. Refiriéndose a los poderes de la municipalidad, la Corte de Virginia se expresó en estos términos:

"Este lenguaje es sustancialmente el mismo adoptado en las cartas orgánicas de otras ciudades de esta comunidad y ha sido repetidamente interpretado en el sentido de conferir al consejo de la ciudad poderes generales de contribución, incluyendo todas las personas y materias de tasación, excepto en tanto en cuanto puedan ser limitados por las leyes del estado o de los Estados Unidos."

Termina la corte su opinión con estas palabras:

"Examinando el caso en su totalidad, somos de opinión que la ordenanza impugnada no está en conflicto con la Constitución y las

leyes de este estado o de los Estados Unidos, y que por el contrario constituye un legítimo ejercicio de los poderes municipales.''

En el caso de *Woodall* v. *Lynchburg,* supra, se reclamó una cantidad satisfecha para cubrir una licencia exigida a una persona para conducir el negocio de agente de trabajo. Se alegó que el demandante había satisfecho al estado $25 por el privilegio de conducir el mismo negocio y que la municipalidad le había exigido el pago de $500. Se alegó además que la ordenanza autorizando esta contribución era excesiva, opresiva e irrazonable, siendo su propósito prohibir el negocio y no levantar fondos para la municipalidad. La Corte de Virginia, resolviendo la cuestión planteada, dijo, entre otras cosas, lo siguiente:

"La ordenanza impugnada fué aprobada en virtud de la autoridad concedida a la ciudad por su carta orgánica. Este lenguaje ha sido repetidamente interpretado en el sentido de conferir a la ciudad facultades generales para imponer contribuciones, excepto solamente en cuanto puedan ser limitadas por las leyes del estado o de los Estados Unidos, e incluye todos los poderes y materias de tasación. La concesión legislativa de poder al consejo de la ciudad de Lynchburg no tiene limitación con respecto al montante de la contribución impuesta. Esta materia se deja enteramente a la discreción del consejo.''

Luego la corte se extiende en algunas consideraciones sobre la facultad de imponer contribuciones, que corresponde únicamente al poder legislativo, y que no debe ser invadida por los tribunales de justicia, citando a Marshall, Cooley y otras autoridades en apoyo de sus conclusiones.

Como se verá, la Corte Suprema de Apelaciones de Virginia, aunque reconoce que la municipalidad tiene las mismas facultades que el estado para imponer contribuciones cuando le ha sido concedido este poder en términos generales, establece el principio de que esta facultad puede ser limitada por las Leyes del estado o de los Estados Unidos. No hay duda de que el estado, que confiere la autoridad, tiene la facultad de limitarla, y si existe una ley general que exime de contri-

bución a determinada propiedad, es lógico asumir que esta expresión de la voluntad legislativa constituye una limitación sobre el poder de la municipalidad. La corte de Virginia concluye que la municipalidad, de acuerdo con los poderes concedidos por su carta orgánica, puede imponer contribuciones dentro de su jurisdicción sobre materias *not withheld from taxation by the laws of the state, whether they are taxed by the state or not.*

McQuillin, en el volumen 6, p. 290 de su obra sobre Corporaciones Municipales anteriormente citada, se expresa así:

"En la interpretación de la concesión de poder a una municipalidad para imponer contribuciones, la regla aceptada por todas las autoridades es que esta interpretación debe ser estricta. Un ciudadano no puede quedar sujeto a la carga de una contribución sin una autorización clara de la ley. Por lo tanto, las leyes autorizando la imposición de contribuciones deben ser estrictamente interpretadas; su esfera de acción no debe extenderse implícitamente, ni su operación debe ensancharse de modo que abarque materias que no están específicamente señaladas, aunque tengan una estrecha analogía. La interpretación judicial debe estar en armonía con la naturaleza y el propósito probable de la Legislatura, y evitar conflictos y conciliar todas las disposiciones aplicables de la ley en la materia, si fuese posible.

"Si la autoridad de la municipalidad para tasar es dudosa, la duda debe resolverse contra la contribución. En casos de duda, las cortes algunas veces dan crédito a la interpretación adoptada por el departamento ejecutivo del estado encargado específicamente del deber de interpretar y poner en práctica las distintas disposiciones de la ley sobre la materia. La razonable presunción es que el estado ha concedido en términos claros e inequívocos todo lo que intentó conceder y por cualquier autoridad que asuman ejercer los funcionarios municipales, deben ellos estar en condiciones de demostrar que esa autoridad reside en las palabras de la concesión.

"Como se ha dicho por el eminente jurista, profesor y escritor Juez Cooley, la regla de estricta interpretación de los estatutos con respecto a los propósitos para los cuales las municipalidades pueden imponer contribuciones, limita a dichas municipalidades en la imposición de esas contribuciones, estrictamente a los propósitos ordinarios para los cuales tales municipalidades están acostumbradas a ejercer sus facultades. La concesión usual no va más allá de es-

tos límites, porque no puede suponerse que al conceder la autoridad acostumbrada, la legislatura tuvo un propósito extraño a los usuales y ordinarios objetos de contribución local en perspectiva. Los males de una interpretación estricta pueden ser obviados fácilmente por la legislatura; pero los males de una interpretación liberal pueden ser irremediables antes de que la legislatura pueda actuar.''

En el caso de *Johnson Home* v. *Village of Seneca Falls,* 37 App. Div. 147, 55 N. Y. Supp. 803, la corte dijo:

''Una villa no tiene el poder inherente de imponer contribuciones sobre las personas o la propiedad, y únicamente posee aquel poder que le ha sido claramente conferido por el estatuto. 2 Dillon Mun. Corp. (4a. ed.) párrafo 763. En un caso en que la política del estado, demostrada por sus estatutos generales, es que cierta propiedad no estará sujeta a contribución, la carta orgánica de una villa que en términos generales autoriza la tasación de toda la propiedad dentro de la misma para propósitos municipales, no autoriza la tasación de propiedad exenta por las leyes generales relativas a toda tributación, porque una concesión de poder en términos generales a una corporación municipal para gravar mediante contribución propiedad dentro de sus límites, no confiere poder para gravar propiedad exenta de contribución por las leyes generales. Las disposiciones de la carta orgánica de la villa de Seneca Falls relativas a contribución son muy generales en sus términos y no revelan una intención de parte de la legislatura de conferir poder a la municipalidad para gravar propiedad exenta por las leyes generales.''

En *Hyattsville* v. *Chesapeake & Potomac Tel. Co.,* 131 Md. 589, 103 Atl. 133, la carta orgánica de la ciudad autorizaba la valoración para propósitos contributivos de toda la propiedad real, personal y mixta en la ciudad. En este caso la Corte de Apelaciones de Maryland dijo:

''Si la alegación del apelante es correcta, entonces pueden aun valorarse para propósitos contributivos, las iglesias, los hospitales y otras cosas que la legislatura ha tenido a bien eximir de tributación. La carta orgánica no puede tener tal significado; solamente se refiere a toda la propiedad que sea tributable bajo las leyes generales del estado . . . . . La legislatura adoptó un plan general para la contribución de las corporaciones por la ley de 1896

y enmiendas subsiguientes o legislación adicional, y nunca intentó que las municipalidades obstaculizaran el plan establecido cuando usó los términos generales antes mencionados."

En el caso de *Mayor, etc., of Wilmington* v. *Tower Hill School Ass'n,* 122 Atl. 442, la Corte Suprema de Delaware se expresó en los siguientes términos:

"Como se dijo en el caso de City of New Orleans v. Canal & Nav. Co., 36 La. Ann. 396, la exención es ilimitada y por lo tanto se extiende a toda tributación, ya sea impuesta por el estado, el condado o por una municipalidad. Las razones que justificaron la exención por parte del estado favorecen con igual fuerza una exención similar por parte de una municipalidad. La ley general fija la política del estado con respecto a la tributación de la propiedad escolar y tal política no puede ser cambiada o abandonada a menos que así lo disponga una ley general."

No es necesario hacer acopio de jurisprudencia para resolver el presente caso. Como ya hemos dicho, la ley municipal es completamente clara. Nuestras municipalidades no pueden gravar bienes exentos de tributación por las leyes de los Estados Unidos o por alguna ley vigente de la Asamblea Legislativa. Los querellados alegan que la ordenanza enmendada dice que la contribución se impondrá únicamente a capital no exento y no gravado por las leyes federales o insulares y que mientras no se ponga en vigor la ordenanza y se hagan y resuelvan las peticiones de exención en contra de los querellantes, no pueden éstos acudir al procedimiento de *certiorari.* La verdad es que el capital representado por préstamos, pagarés y otros documentos negociables, o créditos de clase alguna, garantizados o no, está sujeto a tributación de acuerdo con la ordenanza y que los peticionarios tienen derecho a solicitar y obtener que se les libre de la amenaza que pesa sobre sus créditos. Es cierto que la ordenanza grava el capital no exento de contribuciones; pero si este capital ha de estar representado por préstamos, pagarés y otros documentos negociables y éstos están exentos, la consecuencia lógica es que la referida ordenanza carece de base y

no surte ningún efecto, puesto que no sirve para realizar propósito alguno. Los propósitos del municipio, sin embargo, tienden a hacer efectiva dicha ordenanza, porque de otro modo no habría sido aprobada, y se hace necesaria una declaración judicial decretando su nulidad.

*Debe confirmarse la sentencia apelada.*